GEORGE W. MILLER AND J. C. MILLER, *partners trading as* G. W. MILLER & SON, AND W. A. MICHAEL v. CAMP-BELL COMMISSION COMPANY, *a corporation,* CENTRAL LOAN AND TRUST COMPANY, *a corporation,* T. A. STOD-DART, AND T. A. STODDART, *Trustee.*

(Filed September 9, 1903.)

1. INTERPLEADER—Rights of. Where a plaintiff brings an action and causes an attachment to be levied upon personal property of the defendant, and two others claiming rights and liens adverse to each other, and to the attachment lien of plaintiff, file separate interpleas, the subsequent compromise and purchase of the claim of plaintiff by one of the interpleaders does not dispose of the claim of the other interpleader, and the case should proceed, upon the issues raised by the interpleas.

2. EVIDENCE—Sufficient, When. The record of the evidence in this case examined and found to fully justify and warrant the finding of the court that the money, the consideration for the notes held by the banks, represented by Stoddart, Trustee, went into the cattle attached.

3. INTERPLEADER—Who May Be. Any person claiming property

Miller *et al.* v. Campbell Commission Co. *et al.*

attached may interplead in the cause, and issues made by such interpleader shall be tried as like issues between plaintiff and defendant.

4. SAME—Bond. No bond is by statute required to be given by an interpleader before filing his interplea, setting up his claim to property attached.

5. SAME—Mortgagee. Where the rights of a mortgagee to personal property have been interfered with by attachment proceedings, such mortgagee has a right to assert his lien and right to the property attached, by interplea in such action, and where there are several who claim liens against the attached property by interpleas, the issues raised and joined as between such interpleaders, should be by the court tried and determined, and the property or proceeds awarded to the rightful claimant.

6. DEFECT IN PETITION—Waiver. Where, in the petition, the facts which are claimed to authorize the pleader to maintain the action are fully set forth and no objection is taken by demurrer or answer to the legal capacity of the pleader to sue, the defect, if any. is waived, and can not be taken advantage of for the first time in this court.

7. BILL OF SALE—Parol Testimony. A bill of sale of personal property, absolute upon its face, may be shown to be only a chattel mortgage by parol testimony, and under the facts and parol contract in this case, the bill of sale is held to be a mortgage by Miller & Son.

8. EVIDENCE—What Admissible. It is not error to admit in evidence a statement signed by the parties showing a settlement of the items of their account, and the true condition thereof, where the amount claimed to be due by one of the parties, is subsequently disputed by the other.

9. INTERPLEADER—Notice of Record. Where a party applies to the court for and is granted permission to file an interplea in a case, wherein depositions have been taken and are on file in the case, he is bound with the knowledge of the condition of the record, and such depositions should not be excluded when offered, for the reason that such interpleader was not served with notice of the taking thereof.

10. ERROR—Refusal of Findings Requested. The record examined and the findings of the trial court found to be fully warranted, and no error in refusing the findings requested by plaintiff in error.

11. ASSIGNMENT—Interest in Mortgage. An assignment of a distinct part of an indebtedness secured by mortgage carries with it a pro tanto interest in the mortgage, and a lien in common to the extent of the respective interests.

(Syllabus by the Court.)

*Error from the District Court of Noble county; before Bayard T. Hainer, Trial Judge.*

*Hackney & Lafferty* and *Grant I. Rosenzweig,* for plaintiffs in error.

*Shartel, Keaton & Wells, S. H. Harris* and *Botsford, Deatherage & Young,* for defendants in error.

Opinion of the court by

BEAUCHAMP, J.: This was an action commenced by the Central Loan & Trust Company, a corporation, against the Campbell Commission Company, a corporation, in the district court of Noble county, upon a promissory note for the sum of $15,000 with interest, which note was originally given by the Campbell Commission Company to Clark & Plumb, and by them assigned to the Central Loan & Trust Company, plaintiff: At the time of the commencement of the action the note was not due, and in the absence of the district judge from the county, application was made to the probate judge for an order allowing an attachment, which was granted, and the attachment levied by the sheriff of Noble county upon five thousand head of cattle, as will more fully appear from the fir'ags of the trial court. Subsequently interpleas were filed by A. H. Pierce, George W. Miller & Son, and T. A. Stoddart, as trustees for four banks, and issues were joined thereon. On the trial, the court made separate findings of fact and conclusions of law, which findings fully and fairly state the issues and the facts as disclosed by the evidence; and while they are at some length, in order for a full understanding of the issues and the facts, we are unable to better state them than by setting forth the findings and conclusions in full, as follows:

"FINDINGS OF FACT.

"Upon the request of counsel for interpleader, G. W. Miller & Son and W. A. Michaels, assignee of his interest, the court makes the following findings of fact and conclusions of law:

"1.   On and prior to the 18th day of September, A. D. 1894, one H. A. Pierce, a resident of the State of Texas, was the owner of about seven thousand head of cattle, and the interpleaders G. W. Miller & Son were the lessees of a large pasture in the Ponca Indian reservation in Oklahoma Territory, and at such time negotiated a purchase of such herd of cattle to and with said Pierce, with the assistance of the officers of the defendant, the Campbell Commission Company, who assisted the said Miller & Son in making such purchase, said negotiations resulting in a written agreement executed by the said A. H. Pierce and the Campbell Commission Company, the defendant in this cause, in words and figures following, to-wit:

" 'This agreement made and entered into by and between A. H. Pierce of Wharton county, Texas, party of the first part, and the Campbell Commission Company, in the live stock business, doing business at Chicago, St. Louis, Kansas City and Omaha, party of the second part, witnesseth: That the party of the first part is to have gathered and ready for shipment on or about the 25th day of March to the 15th day of April, 1899, all of the four year old steers and upwards, belonging to himself and J. E. Pierce, that can be gathered with reasonable diligence, no stags, cripples, big-jaws or deformities to be included in this contract, and to be sure steers of the ages above stated, as are common to that portion of Texas.  The party of the first part is to have five thousand steers, more or less, put on board the cars at Pierce Station, Wharton county, Texas, ready for shipment at his own expense as rapidly as a railroad furnishes and handles and places the same.  The party of the second part hereby agrees to take charge of said steers

at Pierce Station, Texas, upon the delivery on board the cars of said steers and ship them to their pastures in the Indian Territory, at its own risk, and pay all freights and other expenses, and give said steers good and sufficient pasture and attention; and further agrees to ship said steers to market during the summer or fall of 1895 for account of the party of the first part. The proceeds of the sale of steers are to be applied to the payment for said steers until the whole number so delivered shall have been fully paid for at the rate of fifteen dollars per head on board the cars at Pierce Station, Texas.

" 'It is distinctly understood and agreed by the parties hereto that the title and ownership of said steers shall be and remain in the party of the first part until the sum of fifteen dollars per head is fully paid by the party of the second part to the party of the first part for each and every steer delivered on board the cars at Pierce Station, Texas, for shipment to the party of the second part. This amount of fifteen dollars per head is to be paid for each steer so delivered net to the party of the first part, the freight and all other expenses to be paid by the party of the first part, in addition to the sum of fifteen dollars per head.

" 'It is further agreed and understood by the parties hereto that the party of the first part may put a man with said steers as his agent, in the pastures of the party of the second part, to represent his interests in said steers, said man to be paid fifty dollars per month by the said party of the second part, from the date of the shipment of the said steers from Pierce Station, Texas, until said steers shall have been shipped to market or fully paid for, and also furnish him horses to ride, and board and lodge him free of cost to the party of the first part during his stay with said steers. Said man is to look exclusively after said herd of cattle and is to obey the instructions of the party of the second part. The sum of five thousand dollars is hereby

acknowledged by the party of the first part, at the signing of this agreement, as part of the purchase price.

" 'The party of the second part agrees to pay the party of the first part interest at the rate of ten per cent. per annum on all unpaid accounts from the date of the shipments of said cattle from Pierce Station, Texas, until full and final payments are made in accordance with this agreement.

" 'It is further understood and agreed that the party of the second part has a right to select from those above mentioned steers ten or twelve hundred for the purpose of feeding the same, on or before November 1, 1894, which are to be fed in the Holt pasture in Madagora county, Texas, and when they are ready for shipment the party of the second part is to pay to the party of the first part the amount of fifteen dollars per head before they are put on board the cars for shipment.

" 'It is understood that the cattle that are to be delivered for the purpose of feeding are to be branded at the time of delivery with the letter 'C' and that the said party of the second part is to furnish branding irons, and the party of the first part to do the branding.

" 'This contract signed in duplicate this 8th day of September, 1894, at Kansas City, Missouri.

         " 'A. H. PIERCE,
         " 'CAMPBELL COMMISSION COMPANY,
         " 'BY JAMES H. CAMPBELL, PRES.

" 'Attest:
" 'WM. ALLBRITIAN,
" 'HENRY M. WITHERS.'

"2. That the Campbell Commission Company, at the time of the execution of said written contract was a corporation engaged in the business of selling cattle on commission and dealing in promissory notes of cattle raisers, feeders, drovers and ranchmen by supplying such cattle-

men with money necessary to conduct and carry on their operations, and re-discounting, selling and transferring such notes and doing a general brokerage business in notes, mortgages and other securities of cattle raisers and dealers. That at the time of the execution of the contract for the purchase of the cattle from Pierce, it was understood and agreed between the Campbell Commission Company and the interpleaders, G. W. Miller & Son, that the said Campbell Commission Company should loan and procure loans of money to the said G. W. Miller & Son, to aid the said G. W. Miller & Son in making such purchase, to enable them to care for, feed and ship the cattle in accordance with said contract of purchase.

"3. The Campbell Commission Company and its predecessors had been for about sixteen years advancing and loaning large sums of money to the said firm of G. W. Miller & Son, to enable them to carry on their business and operations as cattle grazers and dealers in cattle, and the transactions through previous years had been evidenced by notes executed to the Campbell Commission Company, or its predecessors, James H. Campbell & Co., secured by chattel mortgages on the herds of cattle purchased or owned by the said G. W. Miller & Son.

"4. That on the 8th day of September, 1894, the said firm of G. W. Miller & Son was indebted to the Campbell Commission Company in the sum of $28,000, resulting from previous transactions between the Campbell Commission Company and the said Geo. W. Miller & Son, and arising from the losses sustained by G. W. Miller & Son on cattle upon which the Campbell Commission Company had advanced them large sums of money in the manner hereinbefore stated, and which said indebtedness was wholly unsecured.

"5. That at the time of the execution of the written contract of purchase between Pierce and the Campbell Commission Company, as hereinbefore found, it was

6—Vol 18

agreed and understood between G. W. Miller & Son and the Campbell Commission Company that the Campbell Commission Company was to procure and furnish the money necessary to make the first payment of $5,000 on the purchase price of the cattle from Pierce as provided by the contract of purchase and the necessary funds for feeding, caring for and shipping said cattle and other expenses incurred in connection with the carrying out of the contract with Pierce, and that the said contract of purchase should be taken and held in the name of the Campbell Commission Company as the purchaser and apparent owner as security for the payment, first, of such advancement made by the Campbell Commission Company on such purchase price and the expense of keeping and caring for such cattle, and, second, for security for the previously existing indebtedness in favor of the Campbell Commission Company and against the said G. W. Miller & Son.

"6.    That for the purpose of enabling the Campbell Commission Company to carry into effect the verbal understanding and agreement mentioned in the last paragraph with Miller & Son, at or about the time of the execution of the contract with Pierce as hereinbefore set out, the said G. W. Miller & Son executed notes to the Campbell Commission Company aggregating $12,000, which notes, together with the note of the Campbell Commission Company of like amount, were used in effecting a loan for $12,000 from the Third National Bank of St. Louis, Mo., which said bank in making said loan was advised by the Campbell Commission Company of the arrangement between the Campbell Commission Company and the Millers, as hereinbefore found, and the said bank made such loan, believing the same to be secured by chattel mortgage on the cattle covered by the contract of purchase with Pierce. Subsequently $2,000 of such loan was paid and the indebtedness renewed by a note in the sum of $10,000 executed by Miller & Son, and a note in like amount executed by the Camp-

bell Commission Company, the said note of Miller & Son being made payable to the order of the Campbell Commission Company and endorsed to said Third National Bank, and the said note of the Campbell Commission Company being made payable to the Third National Bank of St. Louis, Mo.; that said Third National Bank of St. Louis, Mo., is still the owner and holder of said notes, and the same still remain wholly unpaid; said note of G. W. Miller & Son and the same, as well as the note of the Campbell Commission Company, held by it, is still wholly unpaid.

"Said note for ten thousand dollars made by the Campbell Commission Company and the said note for ten thousand dollars made by G. W. Miller & Son and transferred to the Third National Bank as aforesaid, were each and both given to evidence the same indebtedness and the said ten thousand dollar note given to the Third National Bank of St. Louis by the defendant is the same note referred to in the first item of the contract of assignment from the Campbell Commission Company to T. A. Stoddart, trustee, set out in the 15th paragraph of these findings.

"7.   That the money so procured from the said Third National Bank of St. Louis, Mo., as set out in the last paragraph, was used to reimburse the said Campbell Commission Company for the $5,000 paid by it to A. H. Pierce at the signing of the contract of purchase; the remainder of said money was placed to the credit of Miller & Son on the books of the Campbell Commission Company and was drawn out and received by the said firm of Miller & Son for the purpose of defraying the expenses of handling the cattle, including the contract of purchase and used by them for such purpose.

"8.   On the 11th day of March, 1895, the interpleaders, Geo. W. Miller & Son, made, executed and delivered to the defendant, the Campbell Commission Company, their promissory note for $3,000 due and payable four months after

date, with interest at the rate of eight per cent. per annum after due, and also on the 21st day of March, 1895, made, executed and delivered to the said Campbell Commission Company two other promissory notes for two thousand dollars each, both due and payable on July 11, 1895, with interest from maturity at the rate of eight per cent. per annum. These three notes were sold, indorsed and delivered to the National Park Bank of the city and state of New York, on the *    *    * day of April, 1895, and the proceeds were used in paying freights and other expenses in connection with the care, keeping and shipment of the cattle covered by the contract of purchase hereinbefore set out, and at the time of making the transfer of such notes by the Campbell Commission Company to the said National Park Bank, the said Campbell Commission Company represented to the said National Park Bank, and the said National Park Bank purchased the same upon such belief and representation and understanding that the said Campbell Commission Company held the title to the cattle covered by said contract of purchase to secure the payment of the notes so sold. That the said notes are wholly unpaid, either principal or interest, and are still held and owned by the National Park Bank of New York City aforesaid.

"That on the * * * day of * * * 1895, the said firm of G. W. Miller & Son made, executed and delivered to the Campbell Commission Company, in renewal of a part of the indebtedness which they owed to the said Campbell Commission company at the time of making the contract of purchase of the Pierce cattle, a promissory note in the sum of five thousand dollars, which note was dated on the 25th day of April, 1895, and was due on the 23rd day of September, 1895, and by its terms bears interest at the rate of 8 per cent. per annum. This note was, on or about the 15th day of May, 1895, transferred and endorsed by the Campbell Commission Company to the Northwestern National Bank of Chicago, Ill., as collateral security for a note of the said

Campbell Commission Company to the said Northwestern National Bank for forty-five hundred dollars. This note of five thousand dollars made to the Campbell Commission Company and transferred to the said bank as aforesaid is wholly unpaid, either principal or interest, but the principal indebtedness of the Campbell Commission Company, for which said note for five thousand dollars was deposited as security, has been paid and satisfied, and the said note was surrendered to the receivers of the Campbell Commission Company some time in the fall of the year 1895, and was by the said receiver delivered to the International Loan & Trust Company of Kansas City, Mo., but it appears from the evidence that there is a dispute between the said International Loan & Trust Company and one James H. Campbell, who was president of the Campbell Commission Company, as to the title and ownership of said note. The said Campbell asserting that the payment of the indebtedness of the Campbell Commission Company to the Northwestern National Bank aforesaid resulted from a sale of certain individual stocks or securities belonging to the said James H. Campbell, in person, which he deposited as surety for the payment of said indebtedness on the part of the Campbell Commission Company, and that he is equitably entitled to be subrogated to the rights of the Northwestern National Bank in and to said note of G. W. Miller & Son, which was deposited with said bank as collateral security for the payment of the said forty-five hundred dollars. Neither of the parties claiming title to this note being parties to this action, no finding is made as to the real ownership of said note, but the court does find that so far as G. W. Miller & Son are concerned, the note is wholly unsatisfied and unpaid, and that the real holder thereto is entitled to enforce the same.

"The court further finds that at the time of the transfer of said note of G. W. Miller & Son for five thousand dollars to the said Northwestern National Bank that the said Campbell Commission Company represented to the

said Northwestern National Bank that the said note was secured by a bill of sale upon the five thousand head of cattle purchased for Miller & Son by the Campbell Commission Company from A. H. Pierce, and the said Northwestern National Bank accepted said note and transfer thereof as collateral security aforesaid upon such understanding.

"The forty-five hundred dollar note mentioned in this finding is the same forty-five hundred dollar note mentioned in the third paragraph of the contract of assignment from the Campbell Commission Company to T. A. Stoddart, trustee, set out in the 15th paragraph of these findings.

"10.    That on the 17th day of June, 1894, the said Campbell Commission Company effected a loan for the use and benefit of the Campbell Commission Company in the sum of ten thousand dollars, by means of two promissory notes made by the said Geo. W. Miller & Son, payable to the order of the Campbell Commission Company, and by the Campbell Commission Company transferred and endorsed to the National Live Stock Bank of Chicago, in the state of Illinois, and at the same time the said Campbell Commission Company made and delivered its own promissory note to evidence and secure such indebtedness in the sum of ten thousand dollars, payable to the order of the said National Live Stock Bank of Chicago, Ill., aforesaid, which notes were by the said Campbell Commission Company delivered to the said bank aforesaid.

"That on the 25th day of April, 1895, the said indebtedness was renewed by the said Campbell Commission Company executing to the said National Live Stock Bank aforesaid, its note for ten thousand dollars, payable six months after date, and also by the said G. W. Miller & Son executing to the order of the Campbell Commission Company two promissory notes, dated April 25, 1895, due and payable on the 20th day of September, 1895, with interest at the rate of eight per cent. per annum after due.    And

which said notes were by the Campbell Commission Company transferred to the said National Live Stock Bank by endorsement, waiving protest, which said three notes were each and all given to evidence for the same indebtedness to the said National Live Stock Bank in the sum of ten thousand dollars, and the said National Live Stock Bank is still the owner and holder of the said notes and each and all of them, and the same are each and all due and wholly unpaid, except a credit of twenty-five hundred, forty-one and 04-100 dollars ($2,541.04), endorsed on the back of one of the said fifty-five hundred dollar notes, and on the 8th day of July, 1895. The said note for ten thousand dollars executed by the Campbell Commission Company to the said National Live Stock Bank is the same note mentioned in the second item of the assignment from the Campbell Commission Company to T. A. Stoddart, the interpleader herein, as trustee, mentioned in the 15th paragraph of these findings.

"11. At the time of the renewal of the indebtedness of the Campbell Commission Company and Miller & Son to the National Live Stock Bank of Chicago, it was represented by the Campbell Commission Company to the National Live Stock Bank of Chicago that the said indebtedness had been and was secured by a bill of sale in the nature of a chattel mortgage upon the cattle covered by the contract of purchase between the Campbell Commission Company and the said A. H. Pierce, as set out in the first paragraph of these findings, and the said National Live Stock Bank accepted said note of said Miller & Son and the Campbell Commission Company upon such assurance and understanding.

"12. On the 9th day of September, 1895, Geo. E. Black, one of the receivers of the Campbell Commission Company, appointed by the United States circuit court for the western district of Missouri, as hereinafter found, and as such receiver and in behalf of the Campbell Commission

Company with the said Geo. W. Miller & Son, effected a statement and settlement of the various transactions between the said Campbell Commission Company and the said G. W. Miller & Son, and evidenced such statement by writing in words and figures following, to-wit:

" 'Kansas City, Mo., Sept. 9, 1895.

" 'Received this day from the Campbell Commission Company statements of the account of G. W. Miller, the 'Miller Note Account' and the 'Miller Cattle Account,' 1894, and have checked over and found to be correct all statements as rendered. We also acknowledge receipt of vouchers, including drafts, notes, drafts for freight, in fact all the vouchers as appearing on said account, together with all the notes given by G. W. Miller & Son, G. W. and J. C. Miller, except:

| | | |
|---|---|---|
| Number 2223, | $   200, | Nat. Park Bk., N. Y. |
| Number 2190, | 3,000, | Nat. Park Bk., N. Y. |
| Number 2224, | 2,000, | Nat. Park Bk., N. Y. |
| Number 2192, | 10,000, | 3rd Nat. St. L. |
| Number 2325, | 3,150, | A. B. Gregory. |
| Number 2326, | 3,850, | I. L. & T. Co. |
| Number 2327 | 5,500, | Rec. C. C. Co. |
| Number 2328, | 5,000, | N. W. Nat., Chi. |
| Number 2329, | 5,500, | Nat. L. S. Bk., Chi. |
| Number 2330, | 5,500, | Nat. L. S. Bk., Chi. |

which notes have not been paid, with the exception of an endorsement of $1,571.46 on No. 2192, and an endorsement of $1,072.37 on No. 2327. There is also a profit of something over $2,000 on the last shipment of Pierce cattle, which is to be applied on some of the paper outstanding above enumerated. On account of the controversy as to the title of the cattle between the Metropolitan National Bank of Kansas City and the National Live Stock Bank of Chicago, this transaction does not at this time appear on statement received. In checking over all statements rendered by the Campbell Commission Company we find that

proper credit has been given us on the accounts for all notes
signed by us.                        " 'G. W. MILLER & SON,
                                          " 'J. C. MILLER.

    " 'All the above accounts checked over and verified by
J. C. Miller and myself.                " 'G. E. BLACK.

    " 'Sept. 9, 1895.'

    "13.   The notes of G. W. Miller & Son mentioned in
such statement referred to in the preceding paragraph other
than those transferred to the Third National Bank of St.
Louis, Mo., to the National Park Bank of New York City,
to the Northwestern National Bank of Chicago, Ill., and
also to the National Live Stock Bank of Chicago, Ill., are
each and all the notes given by G. W. Miller & Son to the
said Campbell Commission Company to evidence portions
of the indebtedness from G. W. Miller & Son to the Camp-
bell Commission Company existing at and before the date
of the making of the contract of purchase hereinbefore re-
ferred to from A. H. Pierce.   None of said notes were sold
assigned or transferred upon any understanding or repre-
sentation that they were secured by any mortgage or bill
of sale upon the cattle covered by such contract of pur-
chase.

    "14.   That said Campbell Commission Company, on
the first day of September, 1894, made, executed and de-
livered a promissory note for fifteen thousand dollars, pay-
able to the order of Clark & Plumb, bearing interest after
date at the rate of eight per cent per annum until paid,
and due and payable two years after its date.   This note
was by the said Clark & Plumb sold, transferred, endorsed
and delivered to the plaintiff in this action, the Central
Loan & Trust Company, a corporation organized under the
laws of the state of Texas, and the said Central Loan &
Trust Company, on the 2nd day of July, 1895, instituted
this action in this court for the purpose of recovering the
amount of said promissory note and filed an affidavit for
attachment upon an indebtedness not due, and an applica-

tion to the probate judge of Noble county for an order allowing such attachment to be issued, and thereupon a writ of attachment issued out of this court, directed to the sheriff of Noble county, who executed such writ of attachment by levying the same upon the five thousand head of cattle included in said contract of purchase between the said A. H. Pierce and the Campbell Commission Company, which had been shipped and were then located in the pastures of the interpleaders, G. W. Miller & Son, in the Ponca and Otoe reservations, attached to the county of Noble for judicial purposes, which cattle were at the time in the joint possession of the said A. H. Pierce and the said G. W. Miller & Son. The plaintiff also caused an order of garnishment to be issued to the said A. H. Pierce, which said attachment was so levied by the sheriff of Noble county, upon such property on the 3d day of July, 1895, and which said garnishment was served on the said A. H. Pierce on the — day of July, 1895.

"15.   On the 1st day of July, 1895, the Campbell Commission Company made and executed an instrument of assignment to T. A. Stoddart, the interpleader in this case, which is in words and figures following, to-wit:

"'Kansas City, Mo., July 1, 1895.

"'Whereas, The Campbell Commission Company has executed certain promissory notes as herein described, and has become liable on certain other promissory notes hereinafter described, by reason of endorsement; and being desirous of securing said indebtedness they hereby sell and assign all right, title and interest in and to a certain contract made, signed and delivered in duplicate on the 8th day of September, 1894, by and between A. H. Pierce of Wharton county, Texas, and the Campbell Commission Company to T. A. Stoddart, as trustee, of St. Louis, Mo., for the said purpose of securing the following described paper, to-wit:

"'First.   Third National Bank of St. Louis, one note

dated April 23, 1895, due October 26, 1895, signed by the Campbell Commission Co., $10,000.

" 'Second. National Live Stock Bank, Chicago, note dated June 17th, due on demand, signed by Campbell Commission Co., $10,000.

" 'Third. The Northwestern Bank of Chicago, Ill., one demand note $4,500, signed by Campbell Commission Co.

" 'Fourth. National Park Bank, New York City, one note dated March 11, 1895, due July 14, 1895, $3,000; one note dated March, 1895, due July 14, 1895, $2,000, and one note dated March 21st, due July 14th, 1895, $2,000. All of the above notes being signed by G. W. Miller & Son, G. W. and J. C. Miller, payable to and endorsed by the Campb' Commission Co.

" 'Which said trustee shall have the rights and privileges granted under said contract for the purposes aforesaid, and shall be empowered to do all acts and things that the said Campbell Commission Company are permitted to do under said contract, and to apply proceeds derived therefrom to the payment of the said notes heretofore described proportionately.

" 'In witness whereof the said corporation has caused these presents to be executed by its proper officer, and its corporate seal affixed this 1st day of July, 1895.

" 'CAMPBELL COMMISSION Co.,

" 'JAMES H. CAMPBELL, Prest.

" 'OTIS F. HALL, Secy.'

"This instrument of assignment was delivered to the said T. A. Stoddart on the 2nd day of July, 1895, before the levying of the writ of attachment in this case, and its contents within two or three days thereafter were communicated to A. H. Pierce personally. The execution of this instrument of assignment has also been assented to and ratified by each of the four banks

named therein as beneficiaries in so far as it's clothing the said T. A. Stoddart with the authority and power of trustee are concerned by their knowledge of his acting as such in the prosecution of the interplea in this action and in their active assistance in conducting such litigation in the name of the said T. A. Stoddart, trustee. No finding is made with respect to whether such designation of the said T. A. Stoddart as their trustee is also a binding designation of the manner in which such assignment provides for the distribution or apportionment of any moneys realized therein.

"16.   The said Campbell Commission Co., soon after the levying of the writ of attachment in this case, became insolvent, and George F. Black and T. A. Neal were by the United States circuit court for the western district of Missouri appointed receivers of the assets and property of the said company, and as such closed up its business, collecting and converting its assets, and applied the same in payment and satisfaction of the general indebtedness of the said company, but none of the notes in controversy in this action were proven up in such action before said receivers except the notes held by the National Park Bank of New York City, wherein the liability of the said Campbell Commission Co. on such notes as indorsers was made the basis of a claim against the receivers, and the said National Park Bank received as its ratable share of the moneys realized by the said receivers from the assets of the said Campbell Commission Co. upon the three notes held by it, the sum of four hundred, seven and 96-100 ($407.96), which sum is indorsed under date of March 3, 1897, upon the said three notes, to-wit: $174.84 upon the three thousand dollar note and $116.56 upon each of the two thousand dollar notes.

"17.   After the service and execution of the writ of attachment and of the said order of garnishment hereinbefore set out, the said A. H. Pierce filed an interplea in this case, claiming to own the property so attached under the

provisions of the contract set out in paragraph one of these findings, and also filed an answer under garnishment setting out the fact of the transfer or assignment from the Campbell Commission Co. to T. A. Stoddart, trustee, of the interest of the Campbell Commission Co. under said contract. In pursuance to such answer in garnishment this court entered an order requiring the said T. A. Stoddart, as trustee, to be cited to appear in this action and disclose and set up his interest in the attached property and in accordance with such order the said T. A. Stoddart, as trustee, filed his interplea in this cause, claiming right as such trustee for the indebtedness described under such assignment to him, any and all moneys realized from the sale of the attached property sufficient to satisfy the indebtedness for which he was created as trustee by the said instrument of assignment. Subsequently to this time and in the year 1896, by virtue of an agreement or understanding between the parties then before the court, the said A. H. Pierce was, by order of the court, appointed receiver of all the attached property for the purpose of selling and converting the same into money, and after discharge of the indebtedness due to the said A. H. Pierce on account of the balance of the unpaid purchase money, to hold the residue of such moneys subject to the order of said court; the said A. H. Pierce as such receiver entered into the discharge of his duties, and sold all the attached property, and converted the same into money, and the accounts and transactions of the said A. H. Pierce have heretofore been adjudicated, and the said A. H. Pierce was required by an order of this court to pay the balance remaining in his hands so subject to the order of this court after paying and discharging the indebtedness due himself and the expenses of such receivership the sum of nineteen thousand, nine hundred and fifty dollars, which said sum was by the said A. H. Pierce paid into the funds of the clerk of this court and is now held

by said clerk subject to the order of this court in the premises.

"BAYARD T. HAINER, Judge.

"CONCLUSIONS OF LAW.

"That the bill of sale of the cattle from A. H. Pierce to the Campbell Commission Company should be construed as a chattel mortgage in favor of the Campbell Commission Company subject to the claim of Pierce for the unpaid balance of the purchase price of the cattle to secure:

"First. The expenses and other moneys advanced by the Campbell Commission Co. for the purpose of carrying on the particular transaction.

"Second. The unpaid balance owing from G. W. Miller & Son to the Campbell Commission Co. at the date of the execution of such bill of sale.

"Third. That the procurement of the money from the Third National Bank, specified in the foregoing findings, and the delivery and sale of the said note of G. W. Miller & Son given for such purpose, was an equitable partial assignment of the security held by the Campbell Commission Co. on the cattle in controversy to the Third National Bank of St. Louis, Mo., to the extent of the indebtedness so transferred to the said Third National Bank.

"Fourth. That the transfer to the National Live Stock Bank of Chicago was likewise an equitable partial assignment of the security so created in favor of the Campbell Commission Co. by the said contract of purchase between A. H. Pierce and the said Campbell Commission Co.

"Fifth. That the transfer by the said Campbell Commission Co. of the portion of the indebtedness of G. W. Miller & Son intended to be secured by the said contract between A. H. Pierce and the Campbell Commission Co. to the Northwestern National Bank, was also an equitable partial assignment of such security to the Northwestern National Bank. No conclusion is expressed as to who is the holder of the said note and entitled to enforce said security at this

time, nor as to whether the said note lost its right to participate in such security by having come back to the hands of the receivers of the Campbell Commission Co. as against the other notes secured by the said contract of sale. As against the interpleader, G. W. Miller & Son, the court holds that the said note may be enforced and participate in such security.

"Sixth. The transfer of the rights of the Campbell Commission Co. in and to the said contract of sale between Pierce and the Campbell Commission Co. to T. A. Stoddart, trustee, vested in the T. A. Stoddart, as trustee, the legal title to the mortgage security afforded by such contract of sale for an indebtedness named in such an instrument of assignment, and gives him full power and authority to prosecute this action for the recovery of the funds in controversy.

"Seventh. The said T. A. Stoddart, as trustee, for the use and benefit of the parties named in such contract of assignment to him or other assigns, is entitled to recover the sum of nineteen thousand, nine hundred and fifty dollars, less the unpaid costs in said action, in the hands of the clerk of this court, resulting from the sale of said cattle after the payment of the amount due to A. H. Pierce as vendor thereof, together with the expenses of the receivership, together with judgment for costs against the said G. W. Miller & Son for all costs made in this controversy on the trial of the issue between the said T. A. Stoddart and the said G. W. Miller & Son. The plaintiff in this action is entitled to recover judgment against the said Campbell Commission Co. in the sum of twenty-one thousand, five hundred dollars, together with interest at the rate of eight per cent. per annum from this date, together with the costs in the principal action.

"Eighth. G. W. Miller & Son are entitled to take nothing by their interplea in this case.

"BAYARD T. HAINER, Judge."

Counsel for plaintiffs in error in their brief contend that "The trial court erred in holding that T. A. Stoddart (in place of Central Loan & Trust Co.), as plaintiff, and T. A. Stoddart, trustee, as interpleader, could maintain this case." After all the issues had been made, Stoddart purchased the claim of the Central Loan & Trust Company, who originally attached the cattle as the property of the Campbell Commission Company, and caused such transfer to be noted in the record. As will be observed, the action of the Central Loan & Trust Co. was against the Campbell Commission Co. alone, upon their individual note, and the attachment was issued and levied on the cattle in question as the cattle of the Campbell Commission Co. Stoddart, as trustee for the banks, had filed his interplea, claiming an equitable mortgage lien upon the cattle attached, while Miller & Son had filed an interplea denying the title of the Campbell Commission Co. in the property, and claiming the property as their own, and denying any lien of the Stoddart banks. That the title to the cattle subject to the liens of the interpleaders as set up was in Miller & Son under the evidence cannot be questioned. The contention of plaintiffs in error is that Stoddart, when he purchased the interest of the Central Loan & Trust Co., thereby became plaintiff in the action, and as such plaintiff was claiming a lien by reason of the attachment against the Campbell Commission Co., and that the title in the cattle was in the Campbell Commission Co.; while as trustee for the banks, and by his interplea as such trustee, he denied the right of the Central Loan & Trust Co., which by reason of the purchase and assignment became his claim, and thereby assumed inconsistent positions. Before the purchase of

the interest of the Central Loan & Trust Co. by Stoddart, the conflicting claims were that of the Central Loan & Trust Co., Stoddart, trustee, and Miller & Son, so that after the purchase of the interest of the Central Loan & Trust Co. by Stoddart, there was still an issue, made by the interplea of Miller & Son, as against the claims of Stoddart, both as assignee of the rights of the Central Loan & Trust Co. and as trustee for the banks. Interpleas, such as were filed in this case, are authorized by the statutes of this territory, and the purchase of the interest of the Central Loan & Trust Co. by Stoddart in no way disposed of the issue raised by the interplea of Miller & Son, or their rights thereunder. The court found that the Campbell Commission Co. had not the title in the cattle attached, and that the Central Loan & Trust Co. by reason of their attachment acquired no lien thereon. The claim of Pierce being conceded by all parties, and having been fully paid from the proceeds of the cattle, the only question to be determined was upon the lien of Stoddart, as trustee, upon the proceeds in the hands of the court.

Plaintiffs in error have cited a number of authorities to the effect that where a party attached by virtue of one claim, and interpleaded by virtue of another claim, that such claims being inconsistent, the action could not be maintained, and should be dismissed. Such authorities we think not applicable to the facts in this case. There being at the time of the purchase by Stoddart of the interest of the Central Loan & Trust Co., three distinct claims to the property and the proceeds thereof, Stoddart, to compromise one of such claims, purchased the same, and became subrogated to the rights of that claim, but still left the issue raised by.

the claim of Miller & Son, so that the positions taken by Stoddart were not inconsistent, and in no way changed the issues as raised by the pleading of Miller & Son. After the purchase of the interest of the Central Loan & Trust Co. by Stoddart, the record does not disclose that Stoddart in any way attempted to enforce any claim as against the proceeds of the property by reason of the attachment issued but insisted upon his claim as trustee, and as against Miller & Son. In short, the effect of the purchase and transfer of the interest of the Central Loan & Trust Company was a mere compromise of a conflicting claim. The court had taken charge of the property upon which Stoddart claimed a lien at the suit of a third party, and Stoddart was brought into the case after his interest and claim had been disclosed by Pierce, then a party in interest. He had filed an answer, or interplea, claiming the property by virtue of an equitable lien. After the pleadings were filed, and the liens of the various parties set up, the court, through a receiver, converted the property into money, which then remained in the hands of the court to be distributed and paid to the party or parties whom it should finally determine to be rightfully entitled to it.

The plaintiffs in error contend that "The trial court erred in holding that the money of each or any of the Stoddart banks went into the 5,000 cattle attached in this case." The evidence fully warrants and justifies the finding of the court upon this question.

The plaintiffs in error contend that "The trial court erred in converting the attachment case into a cross action in favor of Stoddart against Miller without bond or affidavit, and before the Third National Bank note was due." Sec-

tions 4244 and 4387 E, Wilson's Annotated Statutes, provide for just such proceedings and do not require that a bond shall be given. After Stoddart had filed his interplea, under an order of the court before made, Miller filed his interplea, raising an issue upon the interplea of Stoddart, and importuned the court to determine the issue thus raised, and neither interpleader was required under the statutes cited to file any bond, and no bond was filed by either party. Under the statutes, issues raised between interpleaders should be tried and determined as like issues between the plaintiff and defendant. When the rights of a mortgagee to personal property have been interfered with by proceedings in attachment, such mortgagee has a right to assert his lien and right to the property attached, by interplea in such action; and where there are several who claim liens as against the attached property by interpleas, the issues raised and joined as between such interpleaders should be by the court tried and determined, and the property awarded to the rightful claimants.

The plaintiffs in error contend that "The trial court erred in holding Stoddart, trustee, vested with any title to the bank notes, sufficient to maintain this suit." In the petition and interplea of Stoddart, trustee, his title and right to maintain the action were fully set forth. No demurrer was filed to the petition for that reason, and if no objection be taken by demurrer when it is shown upon the face of the petition that the plaintiff has no legal capacity to sue, it must be deemed to have been waived; and where such defect does not appear upon the face of the petition, the objection must be taken by answer, and if no objection is taken either by demurrer or answer, the defect is waived, and cannot be taken

advantage of for the first time in this court. (Sections 4293 94-95, Wilson's Statutes; *Leader Printing Co. v. Lowry et al.,* 9 Okla. 89; *Parker v. Wiggins,* 10 Kan. 420.)

The plaintiffs in error contend that "The trial court erred in holding that any lien existed upon the five thousand head of cattle," and in their brief argue that the absolute conveyance made by Pierce is not a mortgage as against the property of Miller, and that no conveyance was made by Miller, and that in the absence of a conveyance by Miller, oral agreements with reference to the bill of sale did not amount to a mortgage. It is conceded by all parties that the bill of sale from Pierce to the Campbell Company was for the benefit of Miller, and that it was agreed by Miller that the bill of sale should be taken in the name of the Campbell Company, and that they should be permitted to retain the same to secure it for the advance made by it in the purchase of the cattle and for the freight, feed and other necessary expenses in maturing the cattle for market, and this was well understood by all of the parties to this suit. The court found, which finding was warranted by the evidence, that the claims of the banks represented by Stoddart, as trustee, were for money advanced and furnished by them to the Campbell Company and Miller to pay the purchase price, the freight and the expenses in maturing the cattle for market, as under the contract it was agreed, and that the advancements so made were the items for which it was agreed a lien should be had upon the cattle in question. It is conceded by counsel for plaintiff in error that a bill of sale, absolute upon its face, may in fact be but a chattel mortgage, and that such fact may be shown by oral testimony, and where shown may and should be enforced as a chattel mortgage. The only contention is

that the fact that the bill of sale was executed by Pierce to the Campbell Commission Company, and not by the Millers to the Campbell Company, and the possession of the cattle being in the Millers, that such bill of sale could not be held to be a chattel mortgage of Miller's. This argument we think wholly untenable under the evidence and the finding of the court, for construing the bill of sale together with the oral contract of the parties at the time, which is practically undisputed, the whole transaction was for the benefit of Miller & Son, and the bill of sale was made to the Campbell Commission Company only for the reason that Pierce did not want to do business with the Millers, and for the further reason, under the verbal contract, to protect the Campbell Company for the advancements that were to be made by them. Under these facts and circumstances, the trial court properly found that the banks represented by Stoddart had an equitable mortgage and lien, and that the delivery of the possession to the Millers was in conformity to the verbal contract and understanding of the parties, and subject to a lien for advancements made under such contract.

On the trial, the court admitted in evidence the statement of the account between the Millers and the Campbell Commission Company, which accounts had been checked over by the parties and found to be correct, and which included a statement of all the vouchers, together with all the notes given by the Millers, and which statement showing such facts was signed by the Millers, and by George E. Black, on the part of the Campbell Commission Company. We find no statement, however, in the record which would warrant us in concluding that the trial court held such statement to have been an estoppel. It seems that the

statement was only admitted in evidence and considered by the court together with the other evidence in the case, and being a statement made and signed by the parties showing a settlement of the items of their accounts and the exact condition thereof, there was no error in admitting such statement in evidence.

The plaintiffs in error contend that the trial court erred in admitting in evidence the depositions of Hickok, Hall, Drummer and Black. Before Miller & Son filed their interplea, the depositions of the witnesses named had been taken by the parties then in the case; and upon an examination we find that the testimony of all the witnesses named, except Black, was only as to the question as to who held the Miller & Son notes, and as to the manner of acquiring them and being still the owners, and that they acquired the same with the understanding that they were secured by a mortgage upon the Miller cattle. After the Millers filed their interplea the deposition of Black, upon due notice, was re-taken and filed in the case. The Millers applied to the court to be permitted to file their interplea with full knowledge of the condition of the record and the depositions that had been then taken and on file in the case. They knew their contents when they made their application and intervened, and they must of necessity accepted the situation as they then found it. If they were not satisfied with the testimony contained in the depositions, they could have upon due notice re-taken them, as was done in the case of Black. To permit them to interplead after the parties previously interested had taken their evidence in the form of depositions, and by such interplea to hold that the parties were required to go to the expense of re-taking their depo-

sitions, would be an injustice that should not be imposed. When the Millers filed their interplea in the suit they did so with full knowledge of the record, and are bound thereby. (Ency. of Pleading and Prac., vol. 2, pages 509-510.)

The remaining assignments of error are that the court erred in overruling the motions of plaintiffs for a new trial, and in permitting the introduction of illegal and incompetent testimony on behalf of Stoddart, trustee, over the objection of plaintiffs, and in the findings of fact and conclusions of law, and in not making the findings of fact and conclusions of law requested by plaintiffs, and in overruling the demurrer to the interplea of Stoddart. There is no particular error to which our attention is directed in the admission of testimony other than as before noticed, and we have carefully gone over the record, and have discovered no error that would require a reversal of the case. The findings of fact are fully warranted and justified by the evidence in the case, and the conclusions of law are exactly as the facts found warrant. The findings of fact requested by plaintiffs in error were in the main based upon evidence contrary to the evidence upon which the court made its findings, and the conclusions of law requested based thereon are not such as are justified by the findings made by the court. There was no error in refusing the request.

As to the assignment that the court erred in overruling the demurrer to the interplea of Stoddart, the evidence discloses no demurrer by plaintiffs in error to the interplea of Stoddart. Therefore that assignment is wholly without justification.

The motion for a new trial sets up no errors that have

not already been noticed. It, therefore, follows that the motion for a new trial was properly overruled.

It is also contended by plaintiffs in error that the assignment made by the Campbell Commission Company on July 1, 1895, by which the Campbell Company assigned to Stoddart all of their right, title and interest in and to the contract and bill of sale from Pierce to the Campbell Company for the purpose of securing the promissory notes upon which the Campbell Company were liable, was of no effect, and would not be sufficient to authorize the maintaining of the interplea by Stoddart. The court found, which finding was justified by the evidence, that the bill of sale and contract of Pierce was in effect and in fact an equitable mortgage by Miller to the Campbell Company for the purpose not only of securing it for notes upon which it had become liable for advancements made to enable the Millers to carry out their contract, but also to secure it for the indebtedness of the Millers to it. It will, therefore, be seen that the Campbell Company was not only interested to the extent of their liability upon the notes held by the banks, but also in the surplus, if any, which under the agreement should be applied to the payment of their debt; that is, that the indebtedness of the Millers upon the account to the Campbell Company was secured by equitable mortgage as well as the notes held by the Stoddart banks. The assignment made by the Campbell Company assigned to Stoddart as trustee all of the interest of the Campbell Company in trust, first, for the payment of the notes upon which it was liable, and second, to the payment to it of the indebtedness of the Millers. While it might be true, as contended by plaintiffs in error, that the assignment of a chattel mortgage

by one not the owner or holder of any of the indebtedness secured thereby would be of no effect, in the case at bar at the time the Campbell Company made the assignment to Stoddart, the Millers were indebted to them upon the account as well as for the liabilities which they had assumed, and such indebtedness being the indebtedness expressly secured by the mortgage, while at that time the Campbell Company only had a portion thereof, they could assign such indebtedness as they then held together with the mortgage securing the same, but such assignment would not only inure to the benefit and payment of the indebtedness which was at that time held by the Campbell Company, but to the payment of all of the indebtedness secured by the mortgage to the benefit of the holder or holders of the note as their rights of priority appeared.

"An assignment of one of several notes secured by mortgage, or an assignment of any distinct part of the indebtedness secured carries with it a *pro tanto* interest in the mortgage, and such has been held to be the effect in the assignment of a certain amount of the mortgage moneys with a right of priority payments. And the assignee of a partial interest in the mortgage becomes a tenant in common of the mortgage property to the extent of the respective interest." (Jones on Chattel Mortgages, 3rd ed., sec. 504-505; *Solberg v. Wright*, 22 N. W. Rep. 381.)

Section 4224, Wilson's Statutes, provides: "Every action must be brought in the name of the real party in interest, except as otherwise provided in section 28."

Section 4236 (sec. 28, above referred to) reads: "When the question is one of common or general interest of many persons and when the parties are so numerous that it is

impossible to get them all before the court, one or more may sue or defend for the benefit of all."

But in addition to this, the banks, each and all of them, as disclosed by the records, fully ratified the action of Stoddart, as trustee, which ratification related back to the beginning; and further, plaintiffs in error raised no question in the trial below, or at any time before such ratification by the Stoddart banks, as to the right of Stoddart to maintain the action.

There is one fact disclosed by the record that is not lost sight of in our consideration, and which must have had influence in the court below in determining the rights of the parties now interested in this case. After all of the claims of the parties had been fully set forth in their pleadings and filed in the court, W. A. Michael, who prosecutes this appeal, as a mere speculator, purchased all of the right, claim and interest of the interpleader, Miller & Son, for the insignificant sum of $350. As found by the court, and as warranted by the evidence in the case, the Millers were justly indebted to all of the parties claiming. There was at that time about $20,000 in the hands of the receiver, and claimed by the Millers. Sooner than to permit and allow such fund to be applied in the liquidation of their just indebtedness, and the payment of the advancements that had been made to them to enable them to purchase and mature the property from which such fund was realized, the Millers were willing for the sum of $350 to permit the person who would assume the chances to recover that magnificent sum, and leave only to their just and honest creditors claims against them, who had previously acknowledged themselves to be wholly and hopelessly insolvent, and Michael, the real

party in interest in this appeal, was willing to assume the chances and invest that small sum in the hope to defeat the creditors holding claims just and honest, and become a party to a fraud equally culpable with that of the Millers. He now pursues this action in the hope that he may discover some technical irregularity or error by which the court will be forced to aid him in his scheme and take from the meritorious creditors of Miller & Son that which justly and rightfully belongs to them, and turn it over to him, who is but a mere speculator in this case.

Under the facts and the evidence disclosed in this case the judgment of the trial court was right, and is therefore affirmed, with costs to plaintiffs in error.

Hainer, J., who presided in the court, not sitting; Gillette, J., absent; all the other Justices concurring.