CARTER v. BEDORTHA.[1]

TRESPASS — EVIDENCE — MOTIVE — INCOMPETENT QUESTIONS — IN-
STRUCTIONS—DAMAGES.

*1. In an action for trespass *quare clausum fregit*, under the
general issue, it is competent for the defendant to introduce
evidence of his motive and reasons for entering the plaintiff's
house, and all the circumstances attending it, although no
justification is pleaded. They are proper for the jury to con-
sider in assessing damages.

2. Courts will not, except in very extraordinary cases, reverse
a judgment for asking incompetent questions which are not
answered, and are promptly ruled out.

3. Damages in trespass may be enhanced by the aggravated cir-
cumstances under which it was committed, and the court, if
his attention is called to it, should so direct. But where no
such request is preferred, and the record does not indicate
that the attention of the court was directed to it, the case
will not be reversed.

Error to Berrien; Coolidge, J. Submitted June 23,
1900. Decided July 3, 1900.

Trespass *quare clausum fregit* by May B. Carter against
Burritt S. Bedortha. From a judgment for plaintiff for
nominal damages only, she brings error. Affirmed.

Plaintiff and defendant own and live upon farms about
60 rods apart. No trouble had come between them until
that out of which came this suit. Some families of Jews
lived near by, whose children passed plaintiff's house on
their way to and from school. She had a son 17 years
old. She kept a large dog, which was accustomed to
bark at and attack these children on their way to and from
school. Plaintiff had great antipathy against the Jews,
and was accustomed to call them "Sheenies." It is

---

[1] Rehearing denied December 11, 1900.
*Head-notes by GRANT, J.

claimed—and the evidence in support of the claim is very strong—that plaintiff's son was accustomed to set the dog upon the children. On March 10th some of these children· went to defendant, complaining that plaintiff's son dogged them as they went by. He told them to go along on the other side of the road, and attend strictly to their business, and he would see that they got through safely. As they got nearly opposite plaintiff's house, the dog ran at them, barking. Defendant picked up a limb of a tree, broke it over his knee, and ran to protect the children. The limb was about the size of his thumb. He tried to intercept the dog before the latter reached the house. He failed in this. Then went to the house, with the stick in his hand, to remonstrate against this treatment of the Jew children. He opened the door without knocking, and stepped inside. The parties differ widely as to what was said. Plaintiff was sitting in a chair when defendant entered. Her version is that he did not make known his errand, but brandished this stick over her head; that thereupon she ordered him from the house, and, to use her own language:

"I pushed him out. I didn't put my hands on him; I put my hands in front of him, and pushed him out. * * * I followed him to the doorsill. * * * After I got him to the door he commenced to abuse me. My son was going to hit him. I told him I would take care of Mr. Bedortha myself. I did not get mad until Saturday forenoon at Mr. Bedortha. [The trouble occurred on Friday.] There was no conversation until I got him to the door. He didn't tell me at any time what he was there for. I spoke to him so that he would know my mind pretty plainly."

According to defendant's version, he went into the house to remonstrate with her for the treatment of these children, but made no assault. He used language which was improper, but which may have been provoked by the language of the plaintiff in calling him a "Sheeny detective."

The declaration is in trespass *quare clausum fregit*, and sets forth that defendant assaulted plaintiff with a

large stick, and called her abusive names. Plaintiff re-covered a verdict of six cents.

*O'Hara & O'Hara,* for appellant.

*George W. Bridgman* and *Gore & Harvey,* for appellee.

GRANT, J. ( *after stating the facts* ). 1. The plea was the general issue. Defendant was permitted, under objection and exception, to introduce evidence in regard to the treatment of these children by plaintiff's son and herself. It is urged that these were matters of justification, and inadmissible without notice. They were not admitted for that purpose, but for the purpose of showing the motive of the defendant in going to the plaintiff's house. The court instructed the jury that the defendant was guilty of trespass. We think the testimony was admissible. The jury had the right to consider the motive of defendant in going to the house. No injury was done to the realty, no bodily injury inflicted, and the only damage plaintiff could recover would be for an injury to her feelings. In such case the reason for entering, and all the circumstances attending it, were competent for the jury to consider.

2. Complaint is made because certain questions were asked in the presence of the jury, although the judge promptly ruled them incompetent, and they were not answered. We find nothing in them to justify a reversal of the case on this ground. Cases are very rare, the circumstances must be very aggravating, and the prejudice very apparent, to justify a reversal of a case because counsel have asked incompetent questions, which the court refused to allow.

3. Plaintiff complains that the court, by its charge, took away from the jury the right to consider the aggravated circumstances of the trespass in assessing the damages. We need not cite authorities to sustain the proposition that damages for trespass may be enhanced by the aggra-

vated circumstances under which it was committed, and
that the language used by, and the motive of, the tres-
passer, are competent to be considered in that connection.
If, therefore, the court had its attention called to this sub-
ject, and failed to so instruct the jury, it would be mani-
fest error.   In commencing his instructions the court said
that the declaration contained two counts,—one for tres-
pass to real estate, and the other for assault.   Thereupon
the attorney for the plaintiff interrupted the court, stating
that there was only one count.   The court thereupon said:
"There are two claims,—one for trespass, and the other
for assault."  He then stated that on the question of
assault there were two questions: (1) Whether there was
an assault.   (2) If there was, what were the damages to
be allowed for it?   The correctness of this statement was
not challenged by the attorney.   It was evidently strenu-
ously argued before the jury, as it is argued in this court,
that there was an assault.   The court then correctly in-
structed the jury as to the measure of damages if an
assault was committed, telling them that the real injuries
might be enhanced by evidence of malice on the part of
the defendant, and that plaintiff could recover for injuries
to her feelings, such as a sense of shame, mortification,
humiliation, shock, and fright.

We think it manifest that the circuit judge submitted
the case to the jury upon the theories upon which it was
argued by counsel.   The jury found that there was no
assault, and the judge instructed them that, for the tres-
pass, plaintiff could recover only nominal damages.   If it
clearly appeared that this point was called to the attention
of the court, we should be compelled to reverse the judg-
ment.   If the court had been requested to instruct the
jury that the measure of damages for the trespass might
be enhanced by the commission of an assault, or the use
of abusive language, it would have been error to refuse it.
This is not a case to justify its reversal upon technicalities,
or to hunt for grounds of error.   Plaintiff, from her own
statement, was not frightened, nor were her feelings

seriously injured. Her character appears in the following testimony:

"In answer to Mr. O'Hara—he asked you what you did to keep the Jews away—you said Lorne [her son] rubbed pork on her face?

"*A.* Yes, sir.

"*Q.* He did it by your orders?

"*A.* Never, sir. I didn't order him to do it, but I didn't care if he did. It happened in the kitchen at my place.

"*Q.* Was that the only time he ever rubbed pork on her face?

"*A.* No; he run her out of the house one day with a piece of pork; rubbed her face with it, too.

"*Q.* He crowded it down her throat at that time, didn't he?

"*A.* He said he was afraid he would choke her."

Inasmuch, therefore, as there is nothing upon this record to indicate that this matter was called to the attention of the judge, or a request made, we decline to reverse the judgment.

Judgment affirmed.

The other Justices concurred.