### KUNKEL v. RATTRAY.
### SAME v. STEYNE et al.

No. 14773—Opinion Filed Nov. 12, 1924.

Rehearing Denied May 5, 1925.

1. **Evidence — Inadmissibility — Offer of Compromise.**

Evidence of a proposed compromise and settlement of a claim which was not accepted cannot be legally admitted in evidence in a trial in which the claim offered to be compromised is the subject-matter of the suit.

2. **Corporations—Fraud in Sale of Stock— Measure of Damages.**

In an action for deceit the measure of damages in the sale of stock is the amount of loss which the plaintiff has actually sustained by reason of fraud. If the stock is entirely worthless, the amount paid therefor, with interest, may be recovered.

3. **Appeal and Error—Sufficiency of Evidence—Conclusiveness of Verdict.**

The verdict of the jury on disputed ques-

tions of fact in an action at law and the judgment of the court thereon will not be disturbed on appeal where there is evidence reasonably tending to support the same.

(Syllabus by Pinkham, C.)

Commissioners' Opinion. Division No. 5.

Error from District Court. Tulsa County: John L. Norman. Assigned Judge.

Action by E. D. Rattray against John C. Kunkel Jr., with which is consolidated the case of Allen N. Steyne et al. against John C. Kunkel. Jr., to recover certain moneys claimed to be due from defendant to plaintiffs. There was a judgment for the plaintiffs. Upon the motions for a new trial the same were overruled as to E. D. Rattray and Allen N. Steyne. and sustained as to the other persons parties to the action. From the judgment rendered in favor of plaintiffs E. D. Rattray and Allen N. Steyne, the defendant. John C. Kunkel, Jr., brings error. From the judgment of the trial court sustaining defendant's motion for a new trial as to the other parties to the action the said parties appeal. Reversed in part and affirmed in part.

Burford, Miley, Hoffman & Burford and Stuart, Sharp & Cruce, for plaintiff in error.

Thompson, Wilson & Thompson, for defendants in error.

Opinion by PINKHAM. C. The two above entitled cases were tried together in the trial court upon a stipulation that the evidence should be considered in both cases, but that separate verdicts should be rendered.

The cases will be referred to in this opinion as the "Rattray" case and the "Steyne" case.

The defendant in error E. D. Rattray was the plaintiff in the Rattray case, and the defendant in error Allen N. Steyne was the plaintiff in the Steyne case. The plaintiff in error, John C. Kunkel, Jr., was the defendant in both cases.

The parties will be designated as they appeared in the trial court.

In the amended petitions in both cases, in addition to the defendant, John C. Kunkel, Jr., Louise Kunkel, J. F. McGuigan, for themselves, and the Eli Oil Company, a corporation, and J. C. Kavanagh, receiver, of the Eli Oil Company, were made parties.

There were two causes of action in each suit.

In the first cause of action in the Rattray case the plaintiff claims to have negotiated for and procured certain royalties called the Brown and Partridge royalties, which were to go into the Eli Oil Company. but were taken in the name of John C. Kunkel, Jr., who refused to put them into the company and then dissolved the company; that the company being dissolved Rattray sought to recover these royalties.

In his second cause of action. Rattray sought to recover $5,000 damages for the fraud of defendant in the conversion of the property of the company resulting in this loss to him by reason of the depreciation in the value of 668 shares of stock held by him in the company.

In the first cause of action in the Steyne case the plaintiff. Allen N. Steyne "for himself and Mrs. Miriam Wardwell" and ten others against John C. Kunkel, Jr., J. F. McGuigan, Louise S. Kunkel, and J. C. Kavanagh, receiver, alleged that he was the holder of stock in the Eli Oil Company in the sum of $3,888 and that Mrs. Wardwell was the owner of stock in the sum of $200 and each of the others named in certain amounts; that the Eli Oil Company was the owner of properties of the value of $100,-000, which defendants conspired to take and which they converted to their own use to the damage of plaintiff in the sum of $50,-000.

In the second cause of action Allen N. Steyne and the other parties represented by him as their attorney in fact, sought to recover the money they had put into the proposition under the circumstances minutely detailed in said cause of action.

Defendants answered separately by general denial and the consolidated cases proceeded to trial before a jury. The trial court sustained a demurrer to the evidence in the first cause of action of Rattray's petition. During the trial the plaintiffs dismissed as to all defendants except Kunkel; and at the close of the trial the plaintiff dismissed the first cause of action in the Steyne case, which appears to have left both cases pending and tried on the second causes of action.

That is to say, in the Rattray case for his alleged loss in the depreciation in value of the stock he held in the company; and in the Steyne and the other parties' case for the amount of money they had put into the company.

The jury returned a verdict for Rattray in the sum of $1,745, and a verdict for Steyne and the other parties in the sum of $3,256, of which sum, as determined by the verdict, Allen N. Steyne was to receive $1,-544 and the eleven other parties above mentioned the balance.

Judgment was entered in both cases against the defendant, John C. Kunkel, Jr., in accordance with the verdict of the jury.

The motion for a new trial in the Rattray case was overruled, exception taken, and the case duly appealed to the Supreme Court.

The motion for a new trial in the Steyne and the other parties' case was sustained except as to Steyne and a new trial granted as to the other parties. to wit, Miriam Wardwell, Mrs. Ralph Getchell, Lillian R. Staples, Daniel Rooney, Carlton F. Bryant, Myrtle Hall, W. C. Rattray, A. J. Mutty, A. W. Staples, Robert H. Washburn, and G. A. Washburn, to which the said mentioned parties and each of them excepted and appealed to this court.

Motion for a new trial was overruled in so far as it applies to the judgment in favor of the plaintiff, Allen N. Steyne, to which the defendant, John C. Kunkel, Jr., excepted and duly appealed to this court.

For reversal of the judgment the defendant, John C. Kunkel, Jr., assigns numerous errors which are substantially the same in both cases.

The propositions discussed in the brief of plaintiff in error relate to the action of the trial court in admitting in evidence a certain instrument written by the defendant, Kunkel, and directed to the plaintiff Rattray, with reference to a settlement of their differences and to certain instructions given by the court, and instructions offered by the plaintiff in error and refused by the court.

The important facts in the Rattray case are as follows:

The plaintiff Rattray and defendant, John C. Kunkel, Jr., were students at Yale University and had been for a long time associated together prior to the organization of the Eli Oil Company in 1919. Rattray came to Tulsa, Okla., after having heard of the oil business while stationed at Ft. Sill, Okla., and decided to make it his business. It appears that he worked in the oil fields a number of months and then returned to Yale to school. While in Tulsa he had written the defendant, Kunkel, about the oil business, and when he went back to Yale he took with him some pictures of oil wells and other oil field scenery, and entered into an arrangement with the defendant with respect to acquiring oil interests in Oklahoma.

The arrangement entered into by the defendant and plaintiff, briefly stated, was to the effect that an oil company should be organized and stock sold to parties in the East to carry out the plan agreed upon. As a result of their agreement the Eli Oil Company, a Delaware corporation, was formed with a capital stock of $50,000.

The plaintiff, Rattray, was in the first instance made president of the company and the defendant, secretary-treasurer.

Thereafter Rattray sold some stock of the company to his personal friends and acquaintances who resided for the most part in the state of Maine, which parties are referred to in the record as "the Maine parties", and will be so referred to in this opinion.

It was concluded by Rattray and Kunkel that it would be necessary to have an expert oil man connected with the company and Rattray, authorized so to do by Kunkel, employed one J. F. McGuigan, who had large experience in the oil business, to approve the purchase of royalties and oil and gas leases.

It may be said to be substantially without dispute that Rattray devoted a considerable portion of his time and his services in securing options on royalties in various counties in this state and in the state of Kansas, for the benefit of the company. It appears that the most valuable options acquired by Rattray consisted of what is termed the "Brown and Partridge royalties." These two properties were taken ultimately in the name of the defendant, Kunkel, but were never assigned by him to the Eli Oil Company.

In June, 1920, there was a reorganization of the company and new officers elected. The defendant, Kunkel, became the president and the plaintiff, Rattray, the secretary-treasurer, and Mr. McGuigan and Louise Kunkel, the mother of the defendant, were members of the board of directors.

At that time there was given to Mr. McGuigan 2,000 shares and to the defendant, Kunkel, 2,000 shares, and to the plaintiff, Rattray, 600 shares, in payment for his services. Rattray had prior to this time purchased 100 shares, which were paid for in money by him in the amount of $800.

At that time it appears the Eli Oil Company did not own any producing property and the sale of stock was closed.

On March 30, 1922, the company was dissolved by the votes of the defendant, Kunkel, McGuigan, and Mrs. Kunkel. It further appears that the defendant, after the dissolution of the company, retained the ownership of practically all of the property in the form of oil and gas leases and royalties.

There was a sharp conflict in the evidence as to what the exact arrangement entered into by these parties was relative to the amount of money that the defendant agreed to put into the enterprise. The plaintiff's testimony was to the effect that there was a distinct agreement that Kunkel would furnish, if necessary, $100,000 to finance the concern. The defendant's testimony is that he agreed to furnish only $15,000.

At the time of the dissolution of the company the defendant, Kunkel, accounted for about $50,000 worth of the property which it is contended by the plaintiff should have belonged to the company, all of which was appropriated to the defendant's own use.

The defendant further admitted in his testimony that if this property had been turned into the company the stock at the time of the dissolution would have been worth $6 per share. The plaintiff and Kavanagh, the receiver of the company, testified that after the dissolution it was worthless.

The plaintiffs offered in evidence their exhibit "J", which was received by the court over the objections of counsel for the defendant.

Exhibit "J" was an offer made in writing by Kunkel to Rattray to compromise their controversy by which Kunkel agreed to pay to the "Maine" parties the amount of their subscriptions in consideration of Rattray's release of his claim to certain royalty interests owned by Kunkel covering the Brown and Partridge farms.

There was no admission of any liability on the part of Kunkel to Rattray or to the "Maine" parties. On the contrary the instrument specifically denied that Rattray had any interest in the Brown and Partridge royalties.

The following two paragraphs of the instrument in question appears to have been considered objectionable by the court and were circled by the court and initialed, to wit:

"And whereas the said E. D. Rattray desires that the aforesaid individuals be protected from loss on account of their purchase of said stock; and

"Whereas the said E. D. Rattray feels that he is entitled to some interest in certain so-called royalties owned by John C. Kunkel, Jr., covering the Brown and Partridge farms, which interest, however, is denied by the said John C. Kunkel, Jr."

The instrument was then admitted in evidence and read to the jury.

The court instructed the jury with reference to this instrument that if they believed from a preponderance of the evidence that it was in fact a compromise proposition they should totally disregard the same: otherwise to give it such consideration as they thought it entitled to, if any, together with all the other facts and circumstances in evidence.

It is contended by counsel for plaintiff in error that this instrument was the purest kind of an offer of compromise and settlement, and that its admission in evidence constituted reversible error.

So far as the plaintiff, Rattray, and the "Maine" parties were concerned the contention must be sustained; that the instrument was a plain, unambiguous offer to settle an anticipated lawsuit without admitting any liability admits, we think, of no doubt.

In fact the record discloses that the trial court stated that "on the face of the instrument a portion of it is clearly a compromise negotiation". The record fairly shows that at the time the defendant, Kunkel, submitted this proposition of settlement to the plaintiff, Rattray, which he declined to accept, Rattray was then considering the bringing of his action against Kunkel. and on the next day instituted his action.

"Evidence of a proposed compromise and settlement of a claim which was not accepted cannot be legally admitted in evidence in a trial in which the claim offered to be compromised is the subject-matter of the suit." C., R. I. & P. Ry. Co. v. Forsythe and Templar et al., 56 Okla. 26, 155 Pac. 851.

In Thorpe Oil & Specialty Co. v. Home Oil Refining Co., 79 Okla. 225, 192 Pac. 573, the court follows the rule of law announced in the Forsythe Case, supra.

In Georgia Ry. & Elec. Co. v. Wallace & Co. (Ga.) 50 S. E. 478, it is said by Lamar, J.:

"The rule against allowing evidence of compromise is founded upon recognition of the fact that such testimony is inherently harmful, for the jury will draw conclusions therefrom in spite of anything said by the parties at the time of discussing the compromise, and in spite of anything which may be said by the judge in instructing them as to the weight to be given such evidence."

In the case of Langdon v. Ahrends (Iowa) 147 N. W. 940, it is said:

"Whether admissions sought to be proven were by way of compromise, or attempts to buy peace, and therefore inadmissible, or mere admissions of liability, or express or

implied promises to pay, are questions of fact for the trial court."

See, also, Barker v. Bushnell, 75 Ill. 222; Finn v. New England Tel. & Tel. Co. (Maine) 64 Atl. 490; Colburn v. Groton, 66 N. H. 151; Roome v. Robinson, 90 N. Y. Supp. 1055.

Authorities are cited by counsel for defendants in error in support of the ruling of the trial court admitting this instrument in evidence (Teasley v. Bradley [Ga.] 35 S. E. 782; and the same case in 47 S. E. 925).

In these cases it appears that the court limits its statement of the law to a case where the claim is unquestioned.

The cases cited also contained this statement:

"If the offer to pay a certain sum is for the settlement of a disputed liability then it is in the nature of an offer to compromise and evidence in regard thereto is inadmissible."

The case of N. Y. Home Ins. Co. v. Baltimore Warehouse Co., cited by counsel for defendants in error (93 U. S. 527) contains this statement:

"The only remaining assignment of error is that the circuit court would not receive in evidence any part of a letter written by the president of the warehouse company to Mr. Coale, the defendant's agent. The letter was an offer of compromise and as such upon well recognized principles it was inadmissible. And it contains no statement which can be separated from the offer and convey the idea which was in the writer's mind. The court was clearly right in rejecting it."

The case of Freeman v. Eldridge, 26 Okla. 601, 110 Pac. 1057, cited by counsel for defendants in error, contains this statement:

"There does not appear to be any offer of compromise of any claim in any certain amount, but merely a request for delay in order that the matter might be adjusted."

These authorities, we think, go only to the extent of stating that an independent admission not connected with the subject-matter of the offer can be admitted.

It clearly appears to us that the subject-matter of the offer of compromsie appearing in the offer of settlement made by Kunkel to Rattray was the subject-matter of Rattray's lawsuit, and we are unable to find in Kunkel's proposition of settlement any admission of his liability to Rattray or to the "Maine" parties. It was simply an offer without admission of liability to pay the "Maine" parties the amount of their subscriptions which Rattray himself had obtained, provided Rattray would release to Kunkel his claim of an interest in certain royalties.

We are unable, however, to agree with the contention of counsel for plaintiff in error that the admission of the compromise proposition contained in the instrument in question was prejudicial to the rights of Kunkel in the Steyne case. The plaintiff, Allen N. Steyne, was not named in the compromise instrument, and nothing in that instrument involved his claim against Kunkel.

The case of Allen N. Steyne stands in many material respects upon a different plan than the E. D. Rattray case. Steyne was also a student at Yale University. Rattray and Kunkel, when they conceived the plan of forming a company and selling oil stock to their friends and acquaintances, called upon him in his room at school and induced him to buy stock in the company. It is not disputed that as a result of their representations Steyne paid to Kunkel personally $800 for stock and later gave to either Kunkel or Rattray $2,500 in Liberty Bonds upon which $2,888 was realized. and stock in the company was delivered to him therefor.

Steyne was not a promoter of the company as was Kunkel and Rattray. He was at no time an active officer, as they were. He was not paid a commission on stock sold; or placed on a salary, as Rattray was. When Steyne discovered that Kunkel had caused the dissolution of the company, whose stock he had bought and paid for in good faith, and the properties which he had a right to believe were owned by the company were held by Kunkel. and his stock thereby made of no value, he properly brought his action at law to recover damages for the fraud and deceit practiced upon him. Gast v. King, 27 Okla. 554, 112 Pac. 997.

It is earnestly contended by counsel for plaintiff in error that the properties held by Kunkel were purchased by him with his individual funds, and that he was under no legal obligation to convey them to the company.

No amount of argument, however earnest and plausible, can disguise the fact disclosed by the record that John C. Kunkel, Jr., was one of the organizers and promoters of the Eli Oil Company; that he became its president; that his mother, and McGuigan, a close friend, were directors; and that he controlled, directed, and managed the corporation in total disregard of the rights of those who had bought and paid for stock

in the company over whose affairs he was the chief officer, and whose duty it was in these circumstances to place the interests of the stockholders of the corporation above his own personal interests.

"The rule to be extracted from all the cases is that such an official is bound to exercise his official powers for the benefit of the corporation in the utmost good faith and that in no case can he be permitted to use his official position to his own private gain and advantage." Thompson on Corporations (2 Ed.) vol. 2, sec. 1487.

There was the same conflict in the evidence as to what representations were made to Steyne to induce him to purchase stock in the Eli Oil Company as in the Rattray case.

Much of the dispute in evidence was over the question whether Kunkel had or had not, as an inducement to Steyne to purchase stock, agreed to invest, if necessary, from his private fortune up to $100,000 in order to make the company a success, and to be reimbursed from the profits of the company.

As to the conflict in testimony, it is sufficient to say that this court in many decisions has refused to disturb a finding of a jury on disputed questions of fact. Oklahoma State Bank v. Airington, 68 Okla. 160, 172 Pac. 462.

There is, however, no serious dispute of the fact that Kunkel kept in his own name and for his individual benefit valuable oil properties which the stockholders were justified in believing from the representations made by him were to be held by the company.

It is urged by counsel for plaintiff in error that several of the instructions given b-- the court are erroneous, and particular attention is directed to instruction No. 4.

The argument is that it is an instruction permitting recovery by the plaintiff, Steyne, either upon the ground of fraud in the inducement in the sale of stock, or damages for the conversion.

An examination of the instruction criticized fails, we think, to sustain the proposition contended for. In the Steyne case, as the action was finally tried, it was simply an action to recover back money paid by him into the company on the representations made directly to him by Kunkel to the effect that, he, Kunkel, would finance the company to the extent of $100,000, and would purchase oil property and put the same into the company.

The instruction complained of is applic-

able to the allegations and proof of the plaintiff, Steyne, that if the jury believed from the evidence that Kunkel invested funds in the property for the use and benefit of the Eli Oil Company and failed and refused and neglected to convey the title to the company, but converted the same to his own use, Steyne and his associates would be entitled to recover what they had paid into the company.

It is further urged that the instruction referred to does not state a correct measure of damages based upon conversion.

Instruction No. 4, as we construe it, is not based upon conversion, but upon fraud and deceit, and the measure of Steyne's damages was properly stated to be the amount that he had invested in the shares of capital stock of the Eli Oil Company, with interest.

"In an action for deceit the measure of damages is the amount of loss which the plaintiff has actually sustained by reason of fraud. * * * If the stock is entirely worthless the amount paid therefor, with interest, may be recovered." 14 C. J. 590.

An examination of other instructions complained of by plaintiff in error, when viewed in connection with all the instructions given, shows they fairly present the law under the facts.

We are further of the opinion that no fraudulent intent at the inception of the company on the part of Kunkel was necessary to be alleged or shown on the trial, and that no instruction of the court was necessary to be given in that respect.

So far as the cross-petition in error of the said "Maine" parties is concerned, we conclude the trial court did not err in sustaining the motion of plaintiff in error granting him a new trial as against them. No authorities are cited in the brief on behalf of the "Maine" parties in support of the contention that the trial court erred in this respect.

We conclude upon the whole case that the judgment of the trial court in the case of E. D. Rattray against John C. Kunkel, Jr., should be reversed with directions to grant a new trial; that the judgment in the case of Allen N. Steyne against John C. Kunkel, Jr., should be affirmed.

We are further of the opinion that the trial court did not err in granting a new trial to John C. Kunkel, Jr., in the case of the so-called "Maine" parties.

By the Court: It is so ordered.