## GROOMS et al. v. JOHNSON.

No. 30864.  May 25, 1943.

*138 P. 2d 98.*

Welch & Welch, of Madill, for plaintiffs in error.

Little & Smith, of Madill, for defendant in error.

HURST, J. Plaintiff, Homer Johnson, sued defendants, J. T. Grooms, a contractor, and the May Oil Incorporated, owner of an oil and gas lease, to recover for labor performed by him and two others, whose claims had been assigned to him, in drilling a well for oil and gas purposes upon such lease, and to foreclose three laborers' liens securing the claims. Judgment was entered for plaintiff upon the verdict of a jury, and defendants appeal.

At the trial of the case plaintiff's counsel called one Mahaney as a witness and asked him this question:

"Some time, did you have a conversation during the last 60 or 90 days with Mr. Grooms regarding a settlement of this case?"

An objection to the question was interposed and sustained. Counsel for plaintiff thereupon asked:

"Mr. Mahaney, have you ever acted as an agent of Mr. Grooms in trying to settle this lawsuit?"

Objection was again made and sustained, whereupon the witness was excused. The witness had answered neither question. Defendant moved for a mistrial on the ground that such questions constituted an attempt to introduce evidence of an offer of compromise on the part of defendants and created prejudice in the minds of the jury. The court denied such motion and instructed the jury that when an objection to a question is sustained, "that means you will not consider the question or answer, it means it is not competent to the issues of the trial and you will not consider the testimony of Mr. Mahaney for any purpose whatsoever, as it doesn't affect this lawsuit in any manner."

An offer of compromise, not accepted, is inadmissible in evidence against the party making the offer. Chicago, R. I. & P. Co. v. Forsythe & Templar, 56 Okla. 26, 155 P. 851; Kunkel v. Rattray, 110 Okla. 289, 231 P. 541. The rule is based upon public policy, which favors the adjustment of disputed claims, and it is thought wise to guarantee to parties that their unsuccessful attempts to compromise will not be used against them at the trial where they might be construed as admissions of liability. Gibson v. Chickasha Cotton Oil Co., 159 Okla. 291, 15 P. 2d 41; 22 C. J. 308; 20 Am. Jur. 477.

By the first question propounded to the witness, counsel simply inquired whether he had had a conversation with Grooms regarding settlement of the case. It probably implied neither that Grooms had been the moving party in bringing about the conversation nor that any offer of compromise had been made.

There is a question as to whether it was objectionable at all. The next question, however, was improper. It could easily be construed to infer that the witness, acting as an agent of Grooms, had attempted to compromise the suit, and in view of the fact that the court had just sustained an objection to the preceding question, it should not have been asked.

It does not follow, however, that a new trial should be granted simply because the question was improper.

"The burden is upon the appellant to show that the error was prejudicial. Before such misconduct of counsel can result in a reversal of the judgment, it must appear that substantial prejudice resulted therefrom and that the jury were influenced thereby to the material detriment of the party complaining." Jenkins v. Davis, 111 Okla. 191, 239 P. 135.

The record discloses that the May Oil Incorporated had contracted with Grooms, its president and principal stockholder, to drill a well for oil and gas purposes upon its lease to a depth of 2,000 feet. He was to receive therefor the sum of $1.50 per foot in cash and $2 per foot in the stock of the company. In December, 1939, plaintiff, Johnson, was employed by Grooms as a driller and he worked on the well for regular wages until about the 1st day of May, 1940, at which time drilling operations were temporarily suspended because of financial difficulties and faulty equipment. Sometime in June, 1940, Grooms and Johnson had a conversation whereby it was agreed that Johnson would resume work on the well and bring two other laborers, Lionel Burrows and C. A. Wall, with him. Johnson, Burrows, and Wall commenced work upon the well in June, 1940, and continued to work thereon until December, 1940, when a depth of 2,310 feet had been reached. During this period they were paid various sums to apply upon their wages, but in December there remained due to Johnson the sum of $650, to Burrows the sum of $447, and to Wall the sum of $581.45.

Burrows and Wall assigned their claims to Johnson.

The only issue at the trial concerned the terms of the oral contract by which Johnson was re-employed in June, 1940. Grooms contended and testified that Johnson, knowing of the poor financial condition of the company, and being without other employment, agreed to resume work upon the well and receive pay therefor only in the event the well produced oil or gas in paying quantities. On the other hand, Johnson contended and testified that Grooms had represented to him that his contract required him to complete the well to a depth of 2,200 feet, that upon the completion of the well to such depth he would receive the sum of $1.50 per foot in cash, and that he would pay him and the other men their wages in full at such time. Grooms admitted the existence of the contract by which the company had agreed to pay him the sum of $1.50 per foot in cash, and $2 per foot in stock, for drilling the well. Plaintiff's evidence consisted of his own testimony and that of a grocer who testified that Grooms had told him that plaintiff would receive more than enough money to pay his outstanding grocery bill upon completion of the well to the contract depth. Defendants' witnesses were chiefly stockholders of the May Oil Incorporated. They testified that at a stockholders' meeting called in July, 1940, for the purpose of raising additional funds to complete the well, Johnson appeared and stated that his faith in the well was evidenced by his agreement not to receive pay for his labor unless the well produced oil or gas in paying quantities.

In the light of the above record we do not believe defendants have sustained the burden of showing that the jury was influenced or the verdict affected by the questions propounded. The questions were not answered and the trial judge promptly admonished the jury not to consider them. It is reasonable to assume that the jury observed the admonition, and the trial court evidently entertained this view.

The jury probably thought it unlikely that workmen would agree to receive pay for their labor in drilling a well only in the event the well produced oil or gas, when their employer was to receive the sum of $3,000 or more upon completion of the well to the contract depth, even though it might be a dry hole.

We conclude that the refusal of the trial court to declare a mistrial did not materially affect defendant's substantial rights, did not probably result in a miscarriage of justice, did not constitute a substantial violation of a constitutional or statutory right, and consequently does not constitute reversible error, in view of our harmless error statutes, 12 O. S. 1941 §§ 78, 636, and 22 O. S. 1941 § 1068.

Judgment on the supersedeas bond is hereby rendered for plaintiff as requested.

Affirmed.

GIBSON, V. C. J., and RILEY, OSBORN, BAYLESS, WELCH, DAVISON, and ARNOLD, JJ., concur. CORN, C. J., dissents.