OKLAHOMA RY. CO. v. STATE ex rel. DEPARTMENT OF HIGHWAYS.

No. 34411.   Nov. 20, 1951.

*237 P. 2d 878.*

Richardson, Shartel & Cochran and Boston W. Smith, Oklahoma City, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and Finis O. Stewart, Asst. Atty. Gen., for defendant in error.

HALLEY, V. C. J. This is an action by the State of Oklahoma, on relation of the Department of Highways, to condemn for highway purposes a strip of land approximately 100 feet wide and about one mile long adjacent to Highway 66 and extending eastwardly from the eastern limits of Yukon in Canadian county, and consisting of 12.68 acres. This land was formerly owned by the Oklahoma Railway Company and used as right of way for its interurban line from Oklahoma City, through Yukon, to El Reno, which had been abandoned about two years prior to condemnation for highway purposes on February 17, 1949.

Commissioners were appointed to assess the damages that would result to the owner, and upon the filing of their report the amount of damages assessed, $2,074.20, was deposited with the clerk of the court and the land appropriated. The defendant demanded a jury trial. The jury returned a verdict for defendant for $1,000 and judgment was entered for that amount, requiring defendant to pay the costs, because the finding of the jury was for a less amount than that awarded by the Commissioners, as provided by subd. 5, sec. 46, 69 O.S. Supp. 1949.

The defendant has appealed, and we shall refer to the parties as they appeared in the trial court. The assignments of error are grouped under two propositions, as follows:

"1. The verdict was grossly inadequate considering the law and the evidence.

"2. The grossly inadequate damages were the result of bias, prejudice and passion on the part of the jury. The said verdict and judgment are contrary to the law and to the evidence. The verdict is contrary to and in disregard of court's instructions. Irregularities in the proceedings of said court prevented defendant from having a fair trial. Counsel for plaintiff was guilty of misconduct."

The defendant contends that the verdict of the jury, placing the value of the land at $1,000, is grossly inadequate. This is slightly less than one-half the sum awarded by the Commissioners. Sec. 46, 69 O.S. 1941, expressly provides for the procedure here followed. The value of the land taken and the damage, if any, to the remainder of the tract are the only issues involved, as was held in Quinn v. State ex rel. King, 173 Okla. 536, 49 P. 2d 98.

There is no evidence before us as to whether other adjacent land was owned by defendant or injured by the condemnation of the land involved, and this leaves only the single issue of the fair market value of the land taken at the date it was appropriated. In Grand River Dam Authority v. Bomford, 188 Okla. 512, 111 P. 2d 182, it was said in the fifth syllabus:

"Where an assignment of error alleges that damages awarded by a jury are excessive and the record fails to disclose facts upon which can be predicated such error, other than a conflict between the witnesses, the court will not disturb the verdict of such jury where there is evidence reasonably tending to support it."

There was evidence that the land had a value of $5,000, while other witnesses placed a value of from $25 to $50 an acre upon it. The verdict of the jury gave it a value of more than $80 an acre. The jury was not bound by the finding of the Commissioners as to its value. The Commissioners found the value of the land at $64 an acre, or $824.20, and awarded $1,250 as its value as a site for billboard advertising. The evidence showed that in 1948 the owner

of the land received $250 for rental for billboard space.

There is competent evidence to support the verdict of the jury as to the fair market value of the land at the time it was taken. One competent witness testified that he could not place a value upon the land for billboard purposes because the income from such use was too uncertain. We are unable to say that the award by the jury was so inadequate as to justify a reversal of the judgment. It is true that there is conflicting testimony as to the fair market value of the land, but the jury had a right to accept the testimony of witnesses who placed a smaller value upon the land than did some of the witnesses for defendant.

A full understanding of the second proposition requires a brief statement of the material facts occurring prior to the condemnation proceedings. When the defendant sought permission of the Corporation Commission to discontinue its interurban line, it conferred with some leading businessmen of Yukon, many of whom were members or officers of the Lions Club, a civic organization which was very active in matters affecting the general good of the community. They were interested in improving the traffic problems on Highway 66 as it approached Yukon from the east. The club passed a resolution to the effect that if the state would condemn the land involved for highway purposes, the club members would pay whatever sum was awarded the Oklahoma Railway Company for the land when taken. It appears further that the Oklahoma Railway Company had agreed to donate this right of way for highway purposes and to build a bus station for Yukon, if the interested citizens would not oppose the abandonment of the interurban line. Such alleged agreement was never completed. The defendant objected to this testimony, and the court sustained the objection and admonished the jury not to consider it. It is complained that plaintiff's attorney persisted in injecting this incompetent testimony into the record, and thus prejudiced the jury against the defendant.

We find that the first witness called by the defendant was asked if he were a member and officer of the Lions Club of Yukon. On cross-examination, plaintiff's attorney asked in what way the Lions Club was interested in the condemnation proceedings. The court sustained an objection to that question. The first witness called by the plaintiff was asked by defendant's attorney on cross-examination the following questions:

"Q. Mr. Frisbie, do you belong to any civic club or organization in Yukon? A. The Lions Club.

"Q. Have you contributed to a fund that was raised there in Yukon for the purpose of acquiring this particular piece of property? A. Yes, sir."

Plaintiff's counsel then asked the witness if the businessmen of Yukon had raised a fund to pay for the right of way in whatever sum the jury might find, and an affirmative answer was given without objection. He then asked if the Oklahoma Railway Company had agreed to give the right of way to Yukon if they would agree not to oppose the abandonment of the interurban. The defendant objected, and the objection was sustained. On cross-examination of the same witness, defendant's counsel asked if the witness had a copy of the "contract" to pay for the right of way, and the witness said it was a resolution by the Lions Club, and not a "contract." Defendant's attorney then stated, "I want to see the contract, if they have one."

Another witness called for the plaintiff stated that he was a member and officer of the Lions Club of Yukon, and was asked about the activities of the Lions Club in securing the land for highway purposes. Objections were sustained. The attorney for the defendant then asked:

"You are one of the men who has contributed to that fund to acquire this land? A. Yes, sir."

The last witness called by the plaintiff had testified without objection that he was a member of the Lions Club and was one of the businessmen of Yukon who had agreed to pay whatever amount the jury awarded for the land involved, and the attorney for the defendant asked:

"Q. Who was that agreement with? (Mr. Rinehart, attorney for plaintiff): That is what I have been trying to prove all day. (Mr. Dudley, attorney for defendant): If the court please—well, that's all right."

In Chicago, R. I. & P. Ry. Co. v. Morton, 57 Okla. 711, 157 P. 917, it was said in the fourth syllabus:

"Where counsel for plaintiff in error has invited the action of the court upon which he predicates error, he will not be heard to complain thereof."

We think all of the testimony in regard to the Lions Club and its activities in securing an improvement of the highway approaching Yukon was incompetent and that the court properly sustained the objections made by defendant to some of the questions in regard to this matter. However, we also think that the defendant invited and participated in such error. It is fundamental that a party cannot complain of errors that he invited and participated in. In Grooms v. Johnson, 192 Okla. 527, 138 P. 2d 98, the rule is announced in the syllabus as follows:

"A judgment will not be reversed because of the refusal of the trial court to declare a mistrial, on account of misconduct of counsel in propounding improper questions to a witness concerning an offer of compromise, unless it appears that substantial prejudice resulted therefrom and that the jury was influenced thereby to the material detriment of the complaining party."

In Jenkins v. Davis, 111 Okla. 191, 239 P. 135, it is said:

"The burden is upon the appellant to show that the error was prejudicial. Before such misconduct of counsel can result in a reversal of the judgment, it must appear that substantial prejudice resulted therefrom and that the jury were influenced thereby to the material detriment of the party complaining."

Defendant complains of the misconduct of counsel in repeatedly asking questions calling for incompetent testimony, but counsel for defendant failed to object to such questions in some instances, and in others he asked questions himself which brought out incompetent testimony.

Defendant admits, on page 25 of its brief, that "the only issue in the case was the market value of the condemned tract." The testimony should have been limited to this issue. The burden was upon the defendant to show that the irrelevant testimony resulted in material detriment to the defendant. In Carter v. Bedortha, 124 Mich. 548, 83 N.W. 277, the Supreme Court of Michigan had under consideration alleged errors by counsel in repeatedly asking incompetent questions, objections to which were sustained. In commenting upon this alleged error, the court said:

"We find nothing in (the questions) to justify a reversal of the case on this ground. Cases are very rare, the circumstances must be very aggravating, and the prejudice very apparent, to justify a reversal of the case because counsel have asked incompetent questions which the court refused to allow."

It would be extremely speculative to find that the incompetent testimony offered caused the jury to render a wholly inadequate verdict for the defendant. It might be argued that after the jury was advised that whatever verdict would be rendered would be satisfied by donations from citizens of Yukon, they made an inadequate finding out of sympathy for their fellow-citizens; but this conclusion is too speculative to warrant serious consideration, and such error as is disclosed was invited and participated in by the defendant. There is competent evidence in the record to sustain the verdict and the judgment based thereon.

Affirmed.