**OKLAHOMA TURNPIKE AUTHORITY,**
Plaintiff in Error,

v.

**Roy E. DANIEL and Jessie Mae Daniel, husband and wife, and The Bank of Tuttle, Defendants in Error.**

No. 40620.

Supreme Court of Oklahoma.

Jan. 12, 1965.

McKeever, Glasser, McKeever & Conrad, Enid, Pierce, Mock, Duncan, Couch & Hendrickson, Gerald A. Karam, Oklahoma City, for plaintiff in error.

Purman Wilson, Purcell, for defendants in error.

HALLEY, Chief Justice.

This is a proceeding in condemnation under the power of eminent domain brought by Oklahoma Turnpike Authority, as plaintiff, against Roy E. Daniel and Jessie Mae Daniel, husband and wife, and The Bank of Tuttle, as defendants. The parties will be referred to as they appeared in the trial court.

On July 25, 1962, the plaintiff filed its petition in the District Court of McClain County, seeking to take for turnpike purposes a fee simple title to surface rights in 4.94 acres and a temporary right-of-way in 0.98 acres, from the northwest corner of the Daniels' 140 acre farm located approximately 5½ miles to the southwest of Oklahoma City, Oklahoma, in McClain County. The Bank of Tuttle holds a mortgage upon the real estate involved herein.

The trial court appointed commissioners to appraise damages resulting to defendants' farm from plaintiff's appropriation of a portion thereof. The commissioners fixed the damages at $6,200. Plaintiff and defendants each demanded a jury trial, which resulted in a jury verdict of $12,280, and the trial court subsequently entered judgment in favor of defendants in the amount of the verdict. Plaintiff filed a motion for new trial and from the order denying said motion, perfected this appeal.

For reversal, plaintiff argues in its brief only that "An excessive verdict was rendered as a result of prejudicial and inflammatory remarks by the opposing counsel in his closing argument to the jury." In this connection, plaintiff contends that the great disparity between the commissioners' award and the amount of the verdict indicates and is persuasive evidence that the jury was unfairly influenced in rendering its verdict.

We have answered this contention in Eberle v. State, Okl., 385 P.2d 868. 873, in stating:

"In Champlin Refining Co. v. Donnell, supra, [173 Okl. 527, 49 P.2d 208, 103 A.L.R. 157] we held that where a demand is made for a jury trial in a

condemnation proceeding, the award made by the commissioners is not competent evidence to go before the jury, and it is not proper to permit the jury to be informed of the amount of the award made by the commissioners.

"It follows that where a trial by jury is had in a condemnation proceeding, the jury determines the damages from the evidence submitted and the award of the commissioners is not competent evidence. Since the award made by the commissioners is not competent evidence, we can not sustain a proposition which has the effect of urging that a disparity between competent and incompetent evidence establishes the fact that the jury was unfairly influenced."

■ In this jurisdiction the rule is well settled that, where a part only of a tract of land is condemned and damages are sought for the value of that taken, and damages to that not taken, the measure of damages is the difference between the fair market value of the whole property immediately before the taking and the fair market value of the portion left immediately after the taking. Western Farmers Electric Cooperative v. Yates, Okl., 288 P.2d 723; State ex rel. Dept. of Highways v. Weaver, Okl., 297 P.2d 549; Driver v. Oklahoma Turnpike Authority, Okl., 343 P.2d 1079; Mid-Continent Pipe Line Company v. Emerson, Okl., 377 P.2d 565; Eberle v. State, supra.

■ In Champlin Refining Co. v. Donnell, 173 Okl. 527, 530, 49 P.2d 208, 212, we said:

"This court will not substitute its judgment for that of the jury in the matter of damages to be awarded for the condemnation of property for public use. To do so would be to destroy the jury system and right of trial by jury guaranteed by the Constitution."

■ It necessarily follows that if a jury is had in condemnation proceedings, the jury determines the amount of damages that an owner is entitled to receive and this Court on appeal, must determine if the verdict is supported by any competent evidence. If it is, the verdict of the jury will not be disturbed; if it is not, we will not affirm the judgment rendered on the verdict. City of Cushing v. Pote et al., 128 Okl. 303, 262 P. 1070; Grand River Dam Authority v. Audrain et al., 193 Okl. 55, 141 P.2d 97; Oklahoma Ry. Co. v. State ex rel. Department of Highways, 205 Okla. 325, 237 P.2d 878; Oklahoma Turnpike Authority v. Betremieux et al., 208 Okl. 171, 154 P.2d 771; Eberle v. State, supra.

Four witnesses were qualified to testify in defendants' behalf concerning the difference between the value of the property before the taking and the value of the remainder after taking. The first witness fixed the value at $35,600 before taking and at $23,000 after the taking, the difference being $12,600. Defendant, Roy E. Daniel, fixed the value at $41,500 before taking and at $25,500 after the taking, or damages at $16,000. The third witness fixed the value at $36,100 before taking, but did not fix the value after taking. The fourth witness fixed the value at $36,210 before taking and at $23,930 after taking, a difference in the sum of $12,280 (a sum identical with the amount of the jury verdict).

Opposed to the above evidence, plaintiff introduced the testimony of two qualified witnesses. The first witness testified that the value of defendants' property was $14,568.40 before taking and the value of the remainder after taking was $12,269.80 a difference of $2,298.60. The second witness testified that defendants' total damages were $2,668, fixing the value of defendants' property at $16,043 before taking and at $15,435 for the remainder after taking, a difference of $608, plus an additional $85 for the temporary right-of-way, and $1,975 for the cost of moving.

■ The verdict was within the amounts that the evidence tended to establish. We conclude and hold that the verdict of the jury in the instant action is supported by competent evidence.

■ However, plaintiff urges that it is entitled to a new trial because the verdict

was rendered under the influence of passion or prejudice by reason of opposing counsel's misconduct. In this connection, plaintiff sets forth three separate excerpts out of the closing argument made by defendants' counsel to the jury. The argument was in substance that plaintiff had made an offer of settlement of only $2,200 and thereby forced defendants to the additional expense of attorney and witness fees through unreasonableness.

■ Plaintiff's attorneys moved for a mistrial immediately following the closing argument. The trial court overruled plaintiff's motion and admonished the jury to disregard any comment in the argument concerning an offer. In support of its contention, plaintiff cites 12 O.S.Supp. 1963 § 651 subd. 4; 53 Am.Jur., Trial § 482; Grooms et al. v. Johnson, 192 Okl. 527, 138 P.2d 98; Plummer v. Fogley, Okl., 363 P.2d 238, 95 A.L.R.2d 251; Chicago, R. I. & P. Ry. Co. v. Forsythe & Templar et al., 56 Okl. 26, 155 P. 851; Kunkel v. Rattray, 110 Okl. 289, 231 P. 541. We agree that the above mentioned portion of the closing argument made by defendants' counsel to the jury was improper. However, we have held that in order for alleged misconduct of counsel in argument to the jury to effect a reversal of a judgment, it must appear that substantial prejudice resulted therefrom and that the jury was influenced thereby to the material detriment of the party complaining which we do not think exists in this case. Grand River Dam Authority v. Audrain et al., supra; Oklahoma Ry. Co. v. State ex rel. Department of Highways, supra; Juckes v. Rogers, 206 Okl. 663, 246 P.2d 335; State ex rel. Dept. of Highways v. Weaver, supra; Oklahoma Turnpike Authority v. Wilcox et al., Okl., 341 P.2d 263; Eberle v. State, supra.

The trial court in its instructions, properly instructed the jury on the measure of damages that defendants were entitled to recover. It does not appear that the jury improperly considered attorney and witness fees as elements of defendants' damages. As previously indicated, there is competent evidence in the record to sustain the verdict and the judgment based thereon. Neither does it appear that substantial prejudice resulted from the remarks of counsel concerning a settlement offer nor that the jury was influenced thereby to the material detriment of the plaintiff.

The judgment of the trial court is affirmed.

DAVISON, BLACKBIRD, IRWIN and BERRY, JJ., concur.

JACKSON, V. C. J. and WILLIAMS, J., dissent.

JACKSON, Vice Chief Justice (dissenting).

The sole issue presented for reversal of the trial court by plaintiff, Oklahoma Turnpike Authority, is as follows:

"An excessive verdict was rendered as a result of prejudicial and inflammatory remarks by the opposing counsel in his closing argument to the jury."

Defendant's argument, complained of, is recited as follows:

"Now I wonder if it's fair to have the Turnpike go out there and drive the stobs and tell you where they're going to take your land and then send one of their employees out there who is working for them $600.00 a month on a salary and step it off and say, this is what we're going to pay you. And if you don't take it, we'll sue you. And then require you to come in and hire a lawyer and pay a $100.00 witness fee for a man to come down here and all the time it's, put you to the expense, why didn't they offer her or why didn't he make it big enough to begin with. Anybody in the world knows that they could have taken this property here and paid them for it".

"Now he says, further when this goes through, though, he says somebody has to be hurt, for progresses sake. But in 1932 I argued a case before the Supreme Court of the U. S., to win it and

take away the last toll bridge in the State of Oklahoma and we said then that toll roads were bad, they're not good for the people of Oklahoma, we can't have them. Now whether a toll road is progress or not, I don't know. I don't know that we have to have them, that a toll road is progress, but he says this is progress, you can determine whether it is or not, you can't get on it unless you pay to get on and get off, you pay ten cents a gallon in taxes and pay two more to get on there, you don't get anything off your tax money to go over it. Now let's be fair, he says somebody needs to be hurt and he is sorry that it's these people here. Ladies and gentlemen, if there has been anybody in this courtroom today who shouldn't be hurt, it's Roy Daniels and his wife. I have never met or seen a finer couple in my life, he was honest, sincere, he's lived there through this turmoil and noise, his wife has, with his children and he said he had five, he has done everything in the world, he's not a vicious man, he didn't come in here and testify viciously, in my opinion he's one of the best men I ever knew and he doesn't have hardly a fair chance against an organization as big as the Turnpike Authority. It may be true he couldn't bring in as many witnesses as they could. He's having to pay attorneys fees because they offered him what? $2,200.00".

"Let's see, they want to be fair, they don't want to hurt anybody. Mr. Remington was willing to give them $400.00 and I don't think the Turnpike Authority ought to have the power to go out and take it and then one of their employees have the power to go out and tell you just what you're going to get and no more, but that's what Mr. Remington did. You take that or go hire yourself a lawyer and hire yourself a lot of high powered witnesses and come in here and fight it and go through the turmoil of a lawsuit to know whether you're going to be home in the morning or whether you're going to have any home or whether they're going to give you enough to move you".

A part of defendants' quoted argument was injected into the case by defendants' own cross examination of one of plaintiff's witnesses, Mr. Remington, as follows:

"Q. As Chief-Right-of-Way Appraiser, is it your duty after the engineers have set off the stakes as to what land it is necessary to take, it is your duty to go to the land owner and tell him how much you will give him?

"A. No, I don't negotiate the deal.

"Q. Do you fix the values?

"A. I appraise the place, yes sir.

"Q. How much are you paid per month?

"A. $600.00."

Following defendants' argument and before the jury began its deliberations the plaintiff objected and moved for a mistrial.

I believe defendants' argument was prejudicial to the Turnpike Authority and was not justified by any issue in the case, and that this argument very probably increased the size of the verdict.

Defendants contend that the argument complained of was legitimate argument in view of the testimony of Authority's Chief Appraiser, Mr. Remington, and the "closing argument" of Turnpike. I am unable to follow this reasoning. Turnpike's closing argument appears to be an effort to repair some of the damage done by defendants' argument.

I would accept a remittitur of not less than $3,000.00, or give the plaintiff a new trial.