Eugene JONES and Annabelle Jones, husband and wife, Appellants,

v.

OKLAHOMA CITY URBAN RENEWAL AUTHORITY, a public body corporate, Appellees.

No. 44542.

Supreme Court of Oklahoma.

June 12, 1973.

As Corrected on Denial of Rehearing Oct. 9, 1973.

Jack M. Short, Oklahoma City, for appellants.

James D. Batchelor, Jerry L. Salyer, Barry W. Johnson, John W. Swinford, Jr., Harry H. Selph II, Oklahoma City, for appellees.

LAVENDER, Justice:

This is an appeal by defendants from verdict and judgment for defendants in the amount of $6,000. The matter arose as a result of a condemnation action brought by

the Oklahoma City Urban Renewal Authority, plaintiffs, to acquire Lots 9 and 10 in Block 26, Park Place Addition, Oklahoma City, Oklahoma, with a duplex house thereon, the house and lots being within the John F. Kennedy Urban Renewal Project No. Oklahoma R–35. Both parties requested jury trial after court appointed commissioners had found that damage to defendants by taking in the condemnation action was in the amount of $7,750.00.

There are two issues. They are whether the trial judge committed reversible error by excluding defendants' evidence showing that public knowledge of plaintiffs' project decreased the fair market value of the property concerned, and whether the trial judge erred in making remarks in the presence of the jury pertaining to defendants' evidence, and by interrogating witnesses, which prejudiced defendants by causing the jury to return a verdict for an inadequate sum. We find that the jury's award was within the range of ample testimonial valuations placed on the property. The valuations were supported with reasons by the witnesses, and from them the jury could make a reasonable and mature judgment. We find no substantial prejudice to rights of defendants, either from attempted exclusion of evidence or remarks of the trial judge.

The defendant husband owner believed that the property was worth $10,750.00 on the date of its taking by condemnation, which was stipulated to be March 19th, 1969. The house had been built in 1961 at a cost to defendants in excess of $8,500.00 plus six months labor by the husband defendant, on two lots with a total of 50′ frontage by 140′ in depth that had cost defendants $1,400.00.

Frank Thompson, Real Estate Salesman and Appraiser, stated that judging from the property's rental of $107.50 per month, it had a "rule of thumb" value of $10,000.-00. He believed that the property was probably worth $8,500.00. He based this on square footage in the house of 1,050

feet at approximately $10.00 per square foot for a replacement value of approximately $10,875.00. He thought that the depreciated value of the house was six or seven thousand dollars and that the value of the lots was $1,500.00. He later firmed up the depreciated value of the house at $7,000.00.

Fred Douglas, brick mason who did all of the brick work (concrete block construction) on the house, placed its value on the date of taking at ten or twelve thousand dollars. The house was on a steel reinforced foundation of concrete, its plumbing was of copper tubing, and its electrical system was in conduit.

John Otto, builder and operator of a lumber and hardware retail store in Spencer, Oklahoma, had reviewed the plans and specifications for building the house in 1961 and found that the house value at that time had been slightly over $10,000.00. He had placed a bid of $10,967.60 for its construction. This did not include connecting the utilities, landscaping, and doing other work on the lots. He believed that the cost of building the house on the day of its taking would have been $10.00 to $10.50 per square foot.

Jim Adams, a real estate appraiser of approximately ten years experience and with other qualifications, appraised the house for plaintiffs. He found that the house had electricity with modern fixtures, two twenty gallon glass-lined hot water tanks, open gas stove heating, no air conditioning, old-style bath room fixtures, ten wooden windows with aluminum screens, composition shingle roof, painted sheetrock interior walls, and a cracked concrete slab floor with cracked asbestos covering. The house was located in a neighborhood of gradual decline over a period of 15 or 20 years. The neighborhood property had many uses—single residences, businesses in front of houses, business properties, and rooming houses. The highest and best use of the house was as a duplex. The fair market value placed on the house by Ad-

ams on the date of its taking was as follows:

1. Cost Approach—reproduction cost minus depreciation plus estimated cost of land; reliable only when the property is new and is being used at its highest and best use. Unreliability is because depreciation and rebuilding costs must be estimated. Depreciation may be physical, functional, and economic. In this case the physical depreciation and economic obsolescence were obvious. Value of the property was $5,750.00.

2. Income approach—consider income from the property, physical condition of the property, and income from comparable properties. Adams assigned a rental income value of $40.00 per month to each of the two duplex units. Value of the property was $4,800.00. No clear answer was given to what the value of the property would be utilizing a rental figure of $107.50—the rental at time of taking.

3. Market approach—a comparison with comparable sales, making adjustments for differences in the compared properties. Valuations given for the property were $5,000.00, $4,750.00, $4,500.00, and $5,000.00.

Adams believed that the fair market value of the property on the date of taking was $5,000.00. He alloted $1,000.00 valuation to the land and $4,000.00 valuation to the buildings.

Gordon Trimble, a real estate broker, and an appraiser for fifteen years or longer, appraised the subject property for the plaintiffs. He found the property in a neighborhood that had been gradually declining for a good many years. The property was in fair or poor condition except for a new insulated water tank. His fair market valuations were:

1. Cost approach. $6,100.00.

2. Income approach. $5,800.00. On a rental of $107.50 per month this figure might be increased three or four hundred dollars.

3. Market Approach. By use of comparable sales, value of the land was $1,250.00, $1,050.00, and $1,250.00. In the same manner, valuations of the house and land, with adjustments, were $5,750.00, $5,750.00, and $5,250.00.

Trimble believed that the fair market value of the property on the date of taking was $5,750.00.

Regarding the alleged improper exclusion of defendants' evidence, this arose in one instance during the testimony of Frank Thompson, the real estate salesman and appraiser. He said, "I considered the property not necessarily in its surroundings at that time but the intended purpose of the property when it was constructed in 1961 and the fact that the decrease in value was not of the property owner's own choosing ---," at which point the court interrupted to say in effect that for the appraisal to be considered it had to be based on market value, replacement, and income methods of evaluation. The witness indicated that he used neither, but used a "theoretical basis." He elaborated on his earlier statement by saying, "It was a junky neighborhood and there were vacant houses and shacks in there that had been caused by announcements made two (2) or three (3) years before when the whole area had deteriorated because of the ---," at which point the court again interrupted. The court said, "Now the theory of what you're talking about is a matter of law in which I will tend to when I get down to instructing the jury. What I am trying to find out from you and what this jury is trying to find out from you is the value of the property, the building, the land and everything on the 19th of March, 1969." Subsequently, Thompson gave his opinion that the property was worth $8,500.00, as stated, supra. This evaluation was not on a theoretical basis, the court making it clear in regard to use of a theoretical basis, "I want to step away from that theory if I can. I

don't understand it. We can't try lawsuits theoretically."

The other matter excluded was a letter from plaintiff Authority given to defendants' tenant and by him to the defendant husband. The letter was not otherwise identified and was excluded by the judge as not pertinent to the lawsuit. It was marked as an exhibit and is included with the record.

■ No offer of proof was made as to what the letter would show or establish. Also, there was no other evidence that public knowledge of plaintiffs' project decreased the fair market value of defendants' property. On these two points, both parties brief and recognize that a party has a duty to call a claimed error of rulings to a trial court's attention (McMillan v. Lane Wood & Co. (1961), Okl., 361 P.2d 487), and his failure to do so usually precludes him from utilizing the error on appeal. (12 O.S.1971, § 630; Boone v. State (1953), Okl., 261 P.2d 581). However, defendants claim an exception to the general rule, namely, that ". . . where it is apparent on the face of the question asked the witness what the evidence sought to be introduced is, and it is material, upon objection being sustained and exception saved, the action of the court may be reviewed on appeal." (St. Louis & San Francisco R. R. Co. v. Walker (1912), 31 Okl. 494, 122 P. 492). Also, 88 C.J.S., Trial, Sec. 74, provides, "An offer of proof is unnecessary where the offer would be a useless ceremony, . . . or where the court indicates such an offer would be unavailing." Plaintiffs respond to this by saying that defendants seek to do on appeal that which they did not attempt to do at trial—introduce evidence that public knowledge of plaintiffs' project decreased the market value of defendants' property, and to object to remarks by the trial court.

■ The failure of the defendants to offer to prove anything further in connection with their claim that public knowledge of the project depressed the value of their property was not an omission which was prejudicial to either the plaintiffs or defendants considering the totality of the evidence which was admitted and the trial court's instructions to the jury as will be discussed hereafter.

In regard to exceptions to remarks by the judge, the court stated during the examination of the brick mason, Mr. Douglas, following a court question as to the square foot cost of lumber work, "All right. You may have exceptions to all the remarks I make but I did it because I just wanted to find out." This straightforward statement is an invitation for considering any prejudicial effect of the trial judge's remarks in the presence of the jury.

On the matter of the alleged excluded evidence, testimony of the defendant husband reflects several references to "Urban Renewal," one being, "I kept no accurate records because at that time Urban Renewal was unheard of in Oklahoma City. I had no idea that I would be required to make a report of this kind. After tearing the structure down and I was unable to get any finance towards building a building in that area I made a mortgage on another piece of property at about 50% above the amount that I would have had to have paid if I had been able to get an F.H.A. loan. * * *." An objection was sustained and the questioning counsel was advised that the matter had nothing to do with the value of the property. The jury was not instructed directly to disregard the testimony. Later the witness said, "I can't finish that statement that I approached Urban Renewal and asked them to give me a bid on this property so that I would know whether it was feasible for me to make the repairs or not?"

■ From the foregoing it is clear that the trial court intended to exclude any evidence pertaining to Urban Renewal. Such exclusion would necessarily have excluded any evidence that public knowledge of plaintiffs' project decreased the fair market value of defendants' property. How-

ever, it is also clear that the jury could have drawn inferences that the plaintiffs' project had a depressing effect on the fair market value of defendants' property. Countering the effect of such inferences was testimony that defendants' property was in an area that had been deteriorating for some years. It was the jury's job to weigh all evidence legally before it, and the trial judge in instructing, recognized that this included any depressing effect that public knowledge of plaintiffs' project may have had on the value of defendants' property. After instructing that the jury should determine the fair market value of the property at the time of its appropriation on 19 March 1969, the judge said:

"In determining the fair market value, this must be done as though the property had not been taken for public improvement. In this connection, if you find from the evidence that knowledge of the proposed taking of the property for urban renewal purposes and its inclusion within an urban renewal area or relocation of tenants caused an increase of the fair market value of the property, then the plaintiff cannot be required to pay for such increase. But on the other hand, if you find from the evidence that such knowledge and relocation of the tenants caused a decrease in the fair market value, the defendants cannot be required to suffer the loss in value and the fair market value of the property must be determined as though it had not been included within an urban renewal area."

■ It is apparent that the trial judge tried to limit the proceedings solely to the issue of the fair market value of the land taken. In Eberle v. State (1963), Okl., 385 P.2d 868, 871, this court agreed with that idea under the facts of that case, quoting from Oklahoma Ry. Co. v. State (1951), 205 Okl. 325, 237 P.2d 878, "In condemnation proceedings the sole issue is the fair market value of the land taken and damage to remaining portion of land, if any,

. . ." However, in Oklahoma Ry. Co. v. State the court found that there was only the single issue of the fair market value of the land taken at the date it was appropriated. Therefore, although a trial court's interest in a condemnation matter lies in the fair market value of the land taken, this is not to say that, in arriving at this determination, there may not be received evidence of public knowledge of plaintiff's activities that decreased the fair market value of defendant's property concerned, and the fair market value adjusted upward by the amount of the decrease in value so induced. This is logically fair if we are to follow the analogous rule that would be applicable if there had been an increase in value of the condemned land, expressed in United States v. 85.11 Acres of Land, etc., 243 F.Supp. 423, 425 (1965):

"* * * This Court definitely agrees with the statement of law contained in the United States v. Miller case, 317 U. S., at page 377, 63 S.Ct. at page 281, where the Court said:

'* * * [T]he Government ought not to pay any increase in value arising from the known fact that the lands probably would be condemned. The owners ought not to gain by speculating on probable increase in value due to the Government's activities.'"

Also, Article 2, § 24, Oklahoma Constitution, provides in part that private property shall not be taken or damaged for public use without just compensation, and that compensation shall be ascertained irrespective of any benefit from any improvements proposed. Justice dictates that the corollary to the benefit provision is applicable.

■ We therefore believe that the trial judge should not have attempted to exclude evidence that public knowledge of plaintiffs' activities caused a decrease in the fair market value of defendants' land. This is in accord with decision of this court in State ex rel. Department of Highways v. Robb (1969), Okl., 454 P.2d

313, wherein it was stated, with authorities cited:

"The state also recognizes the general rule, * * * (citations) * * * that, in condemnation proceedings the extent of the range of inquiry to be permitted regarding the value of the property taken or damaged is largely in the discretion of the trial court and the action of the trial court in admitting or excluding evidence concerning value will not be disturbed unless there has been an abuse of discretion, and also recognizes the general rule, * * * (citation) * * *, that any competent evidence of matters, not merely speculative, which would be considered by a prospective vendor or purchaser, or which tend to enhance, or depreciate, the value of property, is admissible as affecting the value of the property. * * * (citations)."

Be that as it may, the judge did attempt to exclude the evidence, but notwithstanding his efforts, evidence of such public knowledge and its result came before the jury— albeit more by inference than directly. That having occurred the trial judge was correct in giving instructiions that reasonably presented the issues involved. (Janko v. State ex rel. Department of Highways (1969), Okl., 455 P.2d 681, 683).

Competent evidence relating to the issue being tried was before the jury and instructed upon. The jury was able to consider both any depressing effect of public knowledge of plaintiffs' activities on the fair market value of defendants' property, and the countering effect of evidence that defendants' property was in an area that had been deteriorating for a number of years. Likewise, it was able to consider the various dollar fair market valuations placed on defendants' property. Its conclusion as to valuation was within those valuations. We reiterate the often stated principle that this court will not substitute its judgment for that of the jury in matters of damages to be awarded for condemnation of property for public use, nor will it disturb the verdict of a jury if supported by competent evidence, which it was in this case. (Janko v. State ex rel. Department of Highways, supra).

Neither do we find that the trial judge's remarks were prejudicial to the rights of the complaining party, or that any error affected the substantial rights of the parties. Such error as occurred was harmless and there was no miscarriage of justice. (Oklahoma Turnpike Authority v. Hill (1967), Okl., 426 P.2d 365; 12 O.S. § 81; 20 O.S. § 3001).

The judgment of the Court of Appeals is vacated. The judgment of the trial court is affirmed.

DAVISON, C. J., and IRWIN, BERRY, and BARNES, JJ., concur.

WILLIAMS, V. C. J., and HODGES, SIMMS and DOOLIN, JJ., dissent.